**Rita D. SCHLAGER and Ronald
J. Schlager, Appellants**

v.

**Robert CLEMENTS, Jr., Roy E. Brown,
Alton C. Todd and Brown, Todd,
Hagood & Davenport, Appellees.**

No. 14–94–00746–CV.

Court of Appeals of Texas,
Houston (14th Dist.).

Sept. 5, 1996.

Rehearing Overruled Oct. 10, 1996.

Kathleen Hopkins Alsina, C. Vance Christopher, Houston, for appellants.

George W. Vie, III, Bill Griffey, Carl J. Wilkerson, Galveston, Kenneth Tekell, Houston, David M. Gunn, Bellaire, for appellees.

Before LEE, HUDSON and EDELMAN, JJ.

## OPINION

LEE, Justice.

Appellants, Rita and Ronald Schlager, appeal a summary judgment in favor of appellees, Robert Clements, Jr., Roy E. Brown, Alton C. Todd and Brown, Todd, Hagood & Davenport, and judgment awarding appellees' attorney's fees. The Schlagers filed this legal malpractice action alleging negligence, violations of the Texas Deceptive Trade Practices Act (DTPA), breach of contract and gross negligence. Appellees counterclaimed under the DTPA alleging that the action was groundless and brought in bad faith or for the purpose of harassment. Appellees moved for and received a summary judgment in their favor. The trial court held a bench trial on appellees' counterclaim and awarded $50,000 in attorney's fees. In four points of error, the Schlagers appeal both the summary judgment and the judgment awarding appellees attorney's fees. We affirm.

The Schlagers owned and successfully operated two emergency medical clinics in Brazoria County. Despite the fact that the medical clinics were not being offered for sale, TDR Management, Inc. (TDR) approached the couple and offered to purchase the clinics. The parties eventually agreed on a purchase price of $465,000 for the clinics. TDR paid $65,000 in cash and the Schlagers received notes for the remaining $400,000. TDR took over the operation of the clinics and, soon thereafter, defaulted on the notes forcing the Schlagers to pursue foreclosure proceedings. TDR brought suit against the Schlagers alleging fraud in the sale of the clinics and contending that the Schlagers were interfering with the operation of the clinics. To assist in defending the matter, the Schlagers hired Robert Clements of Brown, Todd, Hagood & Davenport. Clem-

ents filed a counterclaim on behalf of the Schlagers seeking to recover on the unpaid notes.

TDR was also a general partner of Consolidated Medical Clinic Emergency Centers, Ltd., (Consolidated) which owned and operated five medical clinics in Houston. While Consolidated had a bankruptcy reorganization pending, the Sisters of Charity to the Incarnate Word entered into negotiations with TDR and Consolidated for the purchase of all seven clinics. During this same time, TDR attempted to settle with the Schlagers so that the sale to the Sisters of Charity could be completed. The Schlagers alleged that they instructed Clements to find out where TDR was getting the money for the proposed settlement, but TDR refused to provide the requested information. Eventually, the parties agreed on a settlement of $300,000, less attorney's and broker's fees of $30,000. The Schlagers presented some evidence that they requested assurances that TDR was not negotiating with a third-party for a sale of the clinics for more than $300,000. The Schlagers contend that despite this request, the settlement was expressly contingent on TDR's sale of the clinics for *no more than* $300,000. The parties ultimately discovered that the seven clinics were sold for $1.3 million of which $300,000 was allocated to the two Brazoria clinics previously owed by the Schlagers. The Schlagers eventually became dissatisfied with Clements' representation of them and brought this legal malpractice action.

In their first point of error, the Schlagers contend that the trial court improperly granted appellees a summary judgment. The standard of review to be followed in a summary judgment is well-established. The movant has the burden of showing that there is no genuine issue of material fact and that he is entitled to judgment as a matter of law. In deciding whether or not there is a disputed material fact issue precluding summary judgment, evidence favorable to the non-movant will be taken as true. Every reasonable inference must be indulged in favor of the non-movant and any doubts are resolved in his favor. *Nixon v. Mr. Property Management Co.,* 690 S.W.2d 546, 548–49 (Tex.

1985); *Montgomery v. Kennedy,* 669 S.W.2d 309, 310–11 (Tex.1984); *Karl v. Oaks Minor Emergency Clinic,* 826 S.W.2d 791, 794 (Tex. App.—Houston [14th Dist.] 1992, writ denied).

Summary judgment for the defendant is proper when the proof shows that no genuine issue of material fact exists on one or more of the essential elements of the plaintiff's cause of action, or when the defendant establishes each element of an affirmative defense as a matter of law. *Black v. Victoria Lloyds Ins. Co.,* 797 S.W.2d 20, 27 (Tex.1990). A defendant who moves for summary judgment has the burden of showing as a matter of law that no material issue of fact exists on the plaintiff's cause of action. *Arnold v. National County Mut. Fire Ins. Co.,* 725 S.W.2d 165, 166–67 (Tex.1987).

The function of a summary judgment is not to deprive a litigant of its right to a full hearing on the merits of any real issue of fact but to eliminate patently unmeritorious claims and untenable defenses. *Dallas Cent. Appraisal Dist. v. G.T.E. Directories Corp.,* 905 S.W.2d 318, 319 (Tex.App.—Dallas 1995, writ denied). The purpose of the summary judgment rule is not to provide either a trial by deposition or a trial by affidavit, but to provide a method of summarily terminating a case when it clearly appears that only a question of law is involved and that no genuine issue of material fact remains. *Id.* at 320.

▪ In a legal malpractice case, the plaintiff must prove a duty owed to him by the defendant, a breach of that duty, injury proximately caused by the breach and damages. *Peeler v. Hughes & Luce,* 909 S.W.2d 494, 496 (Tex.1995). A lawyer in Texas is held to the standard of care which would be exercised by a reasonably prudent attorney, based on the information the attorney has at the time of the alleged act of negligence. *Dyer v. Shafer, Gilliland, Davis, McCollum & Ashley, Inc.,* 779 S.W.2d 474, 477 (Tex. App.—El Paso 1989, writ denied) (citing *Cosgrove v. Grimes,* 774 S.W.2d 662 (Tex.1989)); *Cook v. Irion,* 409 S.W.2d 475, 477 (Tex.Civ. App.—San Antonio 1966, no writ). To prevail in a legal malpractice action, a plaintiff must prove "a suit within a suit" by demonstrating that he would have prevailed in the

underlying action but for his attorney's negligence. *Mackie v. McKenzie,* 900 S.W.2d 445, 449 (Tex.App.—Texarkana 1995, writ denied). Although proximate cause in a legal malpractice action is usually a question of fact, it may be determined as a matter of law if the circumstances are such that reasonable minds could not arrive at a different conclusion. *Id.* If the attorney demonstrates that his failure to act was not the cause of any damages to the client, a summary judgment may be proper. *See id.* (affirming summary judgment because replacement counsel negotiated a settlement under which the client collected more than she would have received had the will been set aside in a will contest suit; the client suffered no damages as the result of the attorney's conduct resulting in a failure of the client's will contest); *MND Drilling Corp. v. Lloyd,* 866 S.W.2d 29 (Tex. App.—Houston [14th Dist.] 1987, no writ) (attorney entitled to summary judgment in legal malpractice case because plaintiff could not show that it would have prevailed if attorney had filed a response to a motion for summary judgment in the underlying action).

Appellees moved for summary judgment contending that Clements' activities did not cause the Schlagers any injury. Appellees' motion states that it was entitled to summary judgment because:

1. Had the Schlagers learned of the $1.3 million purchase price for all seven clinics, they would not have settled the TDR lawsuit.
2. If the Schlagers had not settled the TDR lawsuit, TDR would have filed for bankruptcy relief and the Sisters' of Charity purchase of the clinics would not have occurred.
3. If TDR had filed for bankruptcy, the Schlagers would not have received more than $270,000.

In support of its motion, appellees' presented the deposition testimony of Rita Schlager, Craig Cavalier and Susan Peters. Rita Schlager testified that if she and Ronald had known about the Sisters' of Charity pending sale and purchase price, they would not have settled with TDR for $300,000. Cavalier, a bankruptcy and commercial litigation attorney, testified in his deposition that if he was representing TDR and the Schlagers refused to settle, he would have recommended that TDR file bankruptcy. He also testified that Clements did a "good job" of getting as much as he could for the Schlagers because if TDR had filed for bankruptcy, the purchase price of the two Brazoria County clinics would have been adversely affected. The Sisters of Charity had allocated $300,000 of the total purchase price of $1.3 million to the two clinics previously owned by the Schlagers. Cavalier testified that this allocation was done internally by the Sisters of Charity so that it could establish a purchase price for the five Houston clinics. He opined that if less than $1 million had been allocated to the five Houston clinics, the settlement probably would not have been completed because the creditors of Consolidated would not have agreed to the confirmation of Consolidated's bankruptcy plan. Cavalier stated, "there w[ere] no excess funds that would have gone back to the general and limited partners which could have been reallocated to the purchase price of the two clinics." Cavalier concluded his deposition by testifying that the pleadings available to Clements at the time of the settlement and closing on the sale of the clinics,

fail[ed] to reveal any evidence or basis upon which one can rely to arrive at a conclusion that either the allocation of the purchase price of $1 million to the five medical clinics located in Houston was inappropriate or that excess funds from such sale after the payment of all creditors of Consolidated Medical bankruptcy estate resulted in distribution to TDR Management, Inc. I think I can also opine that in my belief Mr. Clements acted in a reasonably prudent manner.

Appellees also presented deposition testimony by Susan Peters, the bankruptcy attorney who represented Consolidated in its bankruptcy. Peters testified that if the sale had not been completed, TDR would have been forced into filing for bankruptcy. She further testified that if less than $1 million were allocated to the Houston clinics, Consolidated's reorganization plan would not have been confirmed and the sale would not have been possible. Finally, she opined that she

would not have been able to get a better result for the Schlagers than Clements did.

Based on Cavalier's and Peters' deposition testimony and other summary judgment evidence, appellees argue that the evidence demonstrates that Clements was not the cause of any injury to the Schlagers. Accordingly, they argue that they were entitled to a summary judgment against the Schlagers.

The Schlagers did not attempt to directly refute appellees' expert testimony that they would not have recovered more if TDR were "forced" into bankruptcy. Instead, they relied on expert deposition testimony by James Cooper–Hill and Phil Snow. Cooper–Hill testified that Clements should have conducted discovery. He opined that if Clements had pursued discovery, he would have been able to determine the purchaser and total purchase price of the clinics. He believed this would have improved the Schlagers bargaining position and allowed them to recover additional funds. He refused to state an additional amount that the Schlagers would have been able to recover because it would have been speculative. He stated, "I can't tell you that the Schlagers would have been (sic) gotten $10 more or a $100,000 more." When specifically pressed to state an amount of damages which were caused by Clements' failure to adequately review the bankruptcy pleading, Cooper–Hill admitted the damages were:

> Whatever was left on the table. I have not been retained as an expert to assess damages, only to give an opinion as to liability. Damages is (sic) another issue.

Later in his deposition, Cooper–Hill further testified that he thought the allocation of $1 million for the Houston clinics was an unfair allocation. He noted that the Brazoria County clinics had sold for $465,000 not long before the package sale of all of the clinics. He also noted that the five Houston clinics were valued at $269,000 in Consolidated's bankruptcy schedules, yet the Houston clinics were valued at $1 million and the Brazoria clinics were valued at $300,000 for purposes of the sale.

The gist of Cooper–Hill's testimony was that Clements should have performed addi-tional discovery or more actively represented the Schlagers in other ways. The following is indicative of his testimony:

> If it's a package deal, the Sisters [of Charity] have no motivation to the allocation. If Mr. Clements had participated in the discussion of the allocation—if the discussions of the allocation had been a three-party discussion involving the Schlagers and their attorney, and TDR and it's representative, and the Sisters of Charity, what I'm suggesting is, you then had the opportunity for the allocation to be different. Mr. Clements, by his inaction and neglect, permitted that allocation to be a two-party discussion between the Sisters of Charity and the (sic) TDR, and TDR being the general partner in the Consolidated partnership.

> What I'm saying is that if Mr. Clements had participated in the allocation discussion, it could have been a different result and a different allocation. And he was in a position to do that. He just didn't.

The Schlagers also presented deposition testimony by Phil Snow, a bankruptcy attorney. Snow also testified that Clements should have obtained information about the bankruptcy and the sale of the clinics to the Sisters of Charity in order to allow the Schlagers maximum recovery.

Both Snow and Cooper–Hill agreed with Cavalier that no direct payments were made to the TDR principals. However, both Snow and Cooper–Hill indicated that through a series of affiliated organizations, some of the TDR principals received funds from the settlements, allegedly to the Schlagers' detriment. Also, both Snow and Cooper–Hill testified that Schlagers' position was prejudiced or compromised because Clements failed to properly represent the Schlagers.

■ We have reviewed the summary judgment proof submitted by the parties and find that the summary judgment was properly granted. Neither Snow or Cooper–Hill directly attacked appellees summary judgment evidence. Rather, the Schlagers presented summary judgment evidence demonstrating that Clements should have performed additional discovery and other activities. The

Schlagers experts did not contradict appellees' expert testimony that the Schlagers did not sustain any damages regardless of whether Clements' representation was deficient.

■ The Schlagers contend that Cooper–Hill's testimony contradicted appellees' claim of no damages. Cooper–Hill testified, "I can't tell you that the Schlagers would have been (sic) gotten $10 more or a $100,000 more" and that the Schlagers' damages were "whatever was left on the table." However, he also admitted that he was not retained to assess damages. Instead, he was only retained to give an opinion as to damages. Thus, his testimony was not competent summary judgment proof of damages. *See* TEX. R.CIV.P. 166a(c); *Anderson v. Snider,* 808 S.W.2d 54, 55 (Tex.1991) (per curiam), *Aldridge v. De Los Santos,* 878 S.W.2d 288, 296 (Tex.App.—Corpus Christi 1994, writ dism'd w.o.j.); *Gibson v. Methodist Hosp.,* 822 S.W.2d 95, 100 (Tex.App.—Houston [1st Dist.] 1991, writ denied).

In order to avoid a summary judgment once a defendant has produced competent evidence negating an element of a cause of action, the plaintiff must introduce evidence which raises a fact question on that element of the cause of action. If the plaintiff fails to carry this burden, summary judgment is proper. *Maranatha Temple v. Enterprise Prods. Co.,* 893 S.W.2d 92, 97 (Tex.App.—Houston [1st Dist.] 1994, writ denied). Because the Schlagers did not present any competent evidence which indicates that they were damaged as a result of Clements' actions or inactions, the summary judgment was proper. The Schlagers' first point of error is overruled.

In their final three points of error, the Schlagers complain of the award of attorney's fees to appellees. Several months after the trial court granted appellees a summary judgment, the court held a hearing on appellees' counterclaim for recovery of its attorney's fees under the DPTA. *See* TEX.BUS. & COM.CODE ANN. 17.50(c) (Vernon Supp.1996). Appellees' attorney, Bill Griffey, testified that in defense of the suit, appellees had incurred approximately 880 hours or $93,000 in attorney's fees. At the conclusion of this

hearing, the trial court awarded appellees $50,000 in attorney's fees. Soon thereafter, pursuant to a request, the trial court issued findings of fact and conclusions of law. Included within these findings and conclusions were the following (numbering by trial court):

*Findings*

5. The matters encompassed by plaintiffs' claims and defendants' counterclaim arose from the same transaction, and the same facts were required to defend plaintiffs' claims as to prosecute defendants' counterclaim.

6. Defendants' counterclaim necessarily involved the same facts as plaintiffs' claims for common law breach of contract, common law negligence and other common law torts, and alleged statutory violations of the DTPA.

7. Defendants incurred reasonable and necessary attorneys' fees in defending plaintiffs' claims, and in prosecuting their DTPA counterclaim, in the amount of $50,000.

8. Plaintiffs' DTPA claims were brought in bad faith or for the purpose of harassment.

*Conclusions*

1. Plaintiffs' DTPA claims were brought in bad faith.

2. Plaintiffs' DTPA claims were brought for the purpose of harassment.

3. Plaintiffs' DTPA claims were groundless.

■ In their second point of error, the Schlagers contend that the trial court abused its discretion in finding that the suit was groundless and brought in bad faith or for purposes of harassment. Appellees counterclaimed for their attorney's fees under section 17.50(c) of the DTPA, which provides:

On a finding by the court that an action under this section was groundless in fact or law or brought in bad faith, or brought for the purpose of harassment, the court shall award to the defendant reasonable and necessary attorneys' fees and court costs.

TEX.BUS. & COM.CODE ANN. § 17.50(c) (Vernon Supp.1996). Under Sec. 17.50(c), "groundless" means a claim having no basis in law or fact, and not warranted by any good faith argument for the extension, modification, or reversal of existing law. *Donwerth v. Preston II Chrysler–Dodge, Inc.,* 775 S.W.2d 634, 637 (Tex.1989). The standard for determining whether a suit is groundless is "whether the totality of the tendered evidence demonstrates an arguable basis in fact and law for the consumer's claim." *Splettstosser v. Myer,* 779 S.W.2d 806, 808 (Tex.1989). The court may consider evidence that is legally inadmissible or subject to other defects in making this determination if there is some good faith belief that the tendered evidence might be admissible or that it could reasonably lead to the discovery of admissible evidence. *Donwerth,* 775 S.W.2d at 637. A suit is brought in "bad faith" if it is motivated by malicious or discriminatory purpose. *Central Texas Hardware, Inc. v. First City, Texas–Bryan, N.A.,* 810 S.W.2d 234, 237 (Tex. App.—Houston [14th Dist.] 1991, writ denied). Whether a suit is groundless or brought in bad faith is a question of law for the trial court. *Donwerth,* 775 S.W.2d at 637. Our review of the trial court's determinations under Section 17.50(c) is a question of law under an abuse of discretion standard. *Id.* at 637 n. 3; *see also Selig v. BMW of North America, Inc.,* 832 S.W.2d 95, 103 (Tex.App.—Houston [14 Dist.] 1992, no writ).

In support of their counterclaim, appellees presented evidence that at various times, the Schlagers threatened to sue the attorney who assisted them with the sale of the clinics to TDR and TDR's attorneys. They also presented evidence that before the malpractice action was filed, Clements encouraged the Schlagers to talk with another attorney "because I think that he will tell you that there is just nothing there." Despite this advice, the Schlagers filed a pro se suit against Clements in Harris County alleging approximately $900,000 in actual and DTPA trebling damages. The Schlagers opposed a motion to transfer venue to Brazoria County, which was eventually granted, and moved for a default judgment. Appellees also moved to dismiss the action because the Schlagers had failed to designate an expert for twenty-one

months after the trial court ordered them to designate within thirty days. The Schlagers eventually retained counsel and amended their petition. Once appellees were able to depose the Schlagers' experts, approximately six years after suit was filed, they moved for and received a summary judgment contending there were no damages. Appellees also contend that the lack of damages to the Schlagers indicates that the suit was groundless and brought in bad faith.

In addition, appellees rely on several letters written by the Schlagers while the TDR suit was pending. At different times during the TDR suit, the Schlagers wrote:

1. It certainly upsets me when I hear that [TDR and its principals are] laughing and think they are really getting away with this;

2. It now makes me sick to go over all this because of what they have been getting away with. They are taking every penny out of it for themselves and it is "rent free" and they have the nerve to say we are cheating them;

3. It makes me sick to review the records and see how well we were doing and how badly it's gone the last ten months; and

4. I am going to keep pushing the D.A.'s office also.

Appellees argue that these excerpts indicate that the Schlagers were upset because they made a bad deal with TDR. They contend that the Schlagers brought suit against them because they were frustrated by TDR and with other previous parties. Appellees maintain that this demonstrates that the Schlagers had a "malicious purpose" for bringing the suit.

The Schlagers, on the other hand, argue that the suit was not groundless, brought in bad faith or bought solely for the purpose of harassment. They argue that the suit was not groundless because legal malpractice is actionable under the DTPA. *See DeBakey v. Staggs,* 612 S.W.2d 924 (Tex.1981) (per curiam). They also point to their various allegations that Clements failed to adequately investigate and otherwise properly represent them as a basis for finding that the suit was not groundless.

Similarly, the Schlagers argue that they did not bring the suit in bad faith, with malicious intent. They maintain that they trusted Clements to adequately represent them and that they put their life savings in his control only to be "seriously damaged" by his failure to properly handle the claim and settlement. Ronald testified that they did not have anything personal against Clements; rather, they believed that he did not properly represent their interests.

Finally, the Schlagers assert that the suit was not brought solely for the purpose of harassment and note that the trial court only found that the suit was brought for purposes of harassment. The trial court did not indicate, in its findings, that the suit was brought *solely* for harassment as *Donwerth* indicates is required in order to support an award of attorney's fees on that basis. *See Donwerth,* 775 S.W.2d at 638. However, as the supreme court noted in *Donwerth,* the finding of harassment is tied to the finding of groundlessness and bad faith because "it is difficult to conceive of a case which was not groundless but was brought for purposes of harassment." *Id.* As a result of this link between groundlessness and harassment, the Schlagers primarily rely on their argument that the suit was not groundless and brought in bad faith to demonstrate that the suit was also not brought for the purposes of harassment. On appeal, appellees do not argue that the suit was brought for harassment. They rely on the forgoing evidence to show that the suit was groundless and brought in bad faith and do not argue that the suit was brought to harass, the other potential ground for the award under section 17.50(c).

We are to apply an abuse of discretion standard when reviewing a trial court determination that a suit was groundless and brought in bad faith. *Donwerth,* 775 S.W.2d at 637 n. 3; *Ocean Transp., Inc. v. Greycas, Inc.,* 878 S.W.2d 256, 270 (Tex.App.—Corpus Christi 1994, writ denied). When reviewing a trial court's finding under the abuse of discretion standard, we may not substitute our judgment for that of the trial court. *Davis v. Huey,* 571 S.W.2d 859, 862 (Tex. 1978); *Total Minatome Corp. v. Santa Fe Minerals, Inc.,* 851 S.W.2d 336, 338 (Tex.

App.—Dallas 1993, no writ). Rather, we are limited to determining whether the trial court abused its discretion by (1) acting arbitrarily and unreasonably, without reference to guiding rules or principals; or (2) misapplying the law to the established facts of the case. *Downer v. Aquamarine Operators, Inc.,* 701 S.W.2d 238, 241–42 (Tex.1985), *cert. denied,* 476 U.S. 1159, 106 S.Ct. 2279, 90 L.Ed.2d 721 (1986); *Landry's Seafood Inn v. Wiggins,* 919 S.W.2d 924, 927 (Tex.App.—Houston [14th Dist.] 1996, no writ); *Ramsey v. Lewis,* 874 S.W.2d 320, 322 (Tex.App.—El Paso 1994, no writ); *Long John Silver's Inc. v. Martinez,* 850 S.W.2d 773, 775 (Tex.App.—San Antonio 1993, writ dism'd w.o.j.). An abuse of discretion is not found, however, if the trial court bases its decision on conflicting evidence. *Davis,* 571 S.W.2d at 862.

There is no indication that the trial court acted arbitrarily or unreasonably, without reference to guiding rules or principals. Rather, its findings and conclusions track the statute and the necessary elements to award attorney's fees under section 17.50(c). Because there was conflicting evidence presented by the parties indicating that the suit was groundless and brought in bad faith, it was within the trial court's discretion as the finder of fact. Thus, even if we might have reached a different conclusion than the trial court, the trial court did not misapply the law to the facts of the case. Because the trial court was within its discretion, we overrule the Schlagers' second point of error.

In their third point of error, the Schlagers attack the trial court's finding of $50,000 in attorney's fees. They maintain that the evidence was insufficient because appellees failed to segregate their DTPA attorney's fees from the remaining causes of action. *See Stewart Title Guar. Co. v. Sterling,* 822 S.W.2d 1 (Tex.1991). In *Stewart Title,* the supreme court held that

When a plaintiff seeks to recover attorney's fees in cases where there are multiple defendants, and one or more of those defendants have [settled], the plaintiff must segregate the fees owed by the remaining defendants from those owed by the settling defendants.

*Id.* at 10–11. The court also indicated that a similar burden may arise where there are various claims made against one party. *Id.* at 11 ("*If* a party refuses, over objection, to offer evidence segregating attorney's fees among various claims or parties, *and* an appellate court determines that segregation **was required** . . ."). However, an "exception to this duty to segregate arises when the claims involved stem from the same transaction and are so interrelated that their 'prosecution or defense entails proof or denial of essentially the same facts.'" *Id.* (quoting *Flint & Assoc. v. Intercontinental Pipe & Steel, Inc.,* 739 S.W.2d 622, 624–25 (Tex. App.—Dallas 1987, writ denied)). Thus, if the causes of action are "'intertwined to the point of being inseparable,' the party suing for attorney's fees may recover the entire amount covering all claims." *Id.* (quoting *Gill Sav. Ass'n v. Chair King, Inc.,* 783 S.W.2d 674, 680 (Tex.App.—Houston [14th Dist.] 1989), *modified,* 797 S.W.2d 31 (Tex. 1990)).

Griffey testified that all of the fees incurred and service performed in defense of the case were the result of the Schlagers' DTPA/malpractice cause of action. On cross-examination, Griffey admitted that if the DTPA cause of action had not been included, he would have reduced the amount of work performed on the case by approximately twenty percent. He also stated that the same depositions would have been taken and the same level of discovery would have been necessary if the DTPA claim had not been brought. Finally, he admitted that he could not specifically identify what amount of time was spent working on the DTPA claim.

The Schlagers maintain that the evidence is insufficient to support the trial court's finding of $50,000 in attorney's fees because the same work would have been performed if the DTPA claim had not been pursued and because Griffey could not demonstrate what fees were incurred in conjunction with the DTPA claim. These arguments were presented to the trial court. The trial court found the attorney's fees to be $50,000, which was well below the amount testified to by Griffey. In light of the fact that all of the Schlagers' claims arose out of Clements' representation of them and his alleged failure to gather information they deemed important to the settlement negotiations with TDR, we find that the trial court's finding is not so against the great weight and preponderance of the evidence as to be manifestly unjust or erroneous. *See Pool v. Ford Motor Co.,* 715 S.W.2d 629, 635 (Tex.1986); *Skrepnek v. Shearson Lehman Bros., Inc.,* 889 S.W.2d 578, 579 (Tex.App.—Houston [14th Dist.] 1994, no writ). Accordingly, we overrule the Schlagers' third point of error.

In their fourth point of error, the Schlagers contend that Griffey should not have been allowed to testify as an expert because appellees did not properly respond to their request for records of the attorney's fees incurred. During discovery, the Schlagers sought production of "any documents" relied on by an expert for his testimony. The Schlagers argue that Griffey was presented as an expert on attorney's fees and, therefore, appellees were required under rule 215(5) to provide the documents which supported his testimony. *See* Tex.R.Civ.P. 215(5).

When the Schlagers made their objection, Griffey admitted that the day before he had prepared an affidavit which, he thought, would reduce the length of his testimony and assist in the presentation of appellees' case. He also stated, however, that he faxed a copy of this affidavit to opposing counsel when it was completed. Because of the Schlagers' objections, appellees withdrew the affidavit as an exhibit. Also, during the Schlagers' voir dire of him, Griffey stated that he had reviewed his file in preparation for his testimony and admitted that he could not remember in detail the number of hours that he, other attorneys, and his support staff had worked on the case over the eight years the litigation had been pending.

The Schlagers assert that it was error to allow Griffey to testify because his testimony was based on the billing records that he reviewed and those documents had not been produced pursuant to their request for production. In support of their argument, the Schlagers rely on *Varner v. Howe,* 860 S.W.2d 458 (Tex.App.—El Paso 1993, no writ). We agree that *Varner* is applicable;

however, we disagree that it supports the Schlagers' argument.

In *Varner*, the appellant similarly claimed that the trial court erred in allowing an attorney to testify because he had failed to furnish his billing statements and contract of employment. There, the attorney was named as a testifying expert in a response to an interrogatory which also indicated that the billing statements and contract of employment would be included with the response to the requests for production. The documents were not produced and were not admitted at trial, but the attorney was allowed to testify.

The El Paso court noted that a trial court does not have any discretion under rule 215(5) if a specific witness is not identified and specifically requested documents are not produced. *Id.* at 464; *see also Alvarado v. Farah Mfg. Co.*, 830 S.W.2d 911, 914 (Tex. 1992). However, because the attorney was properly identified as an expert in the response to interrogatories, the court held that his testimony was properly admitted. The court stated:

> The trial court properly applied the automatic sanction to the billing statements that were never furnished. We conclude, however, that the court was not only correct in permitting Howe's attorney to testify on his attorney's fees but it would have been an abuse of discretion not to have done so.

*Varner*, 860 S.W.2d at 464.

The facts in the current case are nearly identical to *Varner*. Griffey was properly identified[1] and no documents were admitted. The only evidence which was admitted was Griffey's testimony. Griffey's testimony was based on personal knowledge even though he had recently referred to his client files. If anything, the failure to produce the documents would affect the weight of Griffey's testimony rather than its admissibility. In fact, the trial court only awarded $50,000 in attorney's fees despite the fact that Griffey had testified that his fees were

reasonable and necessary to defend the suit and that they were in excess of $90,000.

We find that the trial court did not abuse its discretion in allowing Griffey to testify. Accordingly, we overrule the Schlagers' fourth point of error.

The judgment of the trial court is affirmed.

EDELMAN, J., concurs in the results only.

1. The responses to interrogatories were not included in the appellate record. However, during the discussion between counsel and the court, appellees' attorney stated that he had "been designated for years as an expert" to testify about attorney's fees. The Schlagers did not dispute this assertion at trial or on appeal.