Opinion Issued September 22, 2005




     






In The
Court of Appeals
For The
First District of Texas




NO. 01-04-00486-CV




MICHAEL BARKHAUSEN, Appellant

V.

CRAYCOM, INC. D/B/A CRAYONS TO COMPUTERS, ANTHONY
MATERA, AND SHARON MATERA, Appellees




On Appeal from the County Civil Court at Law No. 1
Harris County, Texas
Trial Court Cause No. 781,033







O P I N I O N

          In a dispute over an investment, appellant Michael Barkhausen sued Craycom
Incorporated, d/b/a Crayons to Computers, and its president and vice-president,
Sharon and Anthony Matera (collectively “Craycom”). After holding a bench trial,
granting a new trial, and then holding a second trial, the trial court entered judgment
in favor of Craycom and awarded it $30,000 in attorney’s fees as a sanction. In this
appeal, we decide whether the trial court abused its discretion in (1) denying
Barkhausen a jury for the second trial, and (2) awarding fees as a sanction. We
conclude it did not as to the former but did as to the latter. We therefore affirm the
trial court’s judgment on the merits and reverse the sanctions award. 
The Facts
          Craycom employed Pamela Barkhausen. In 2000, she entered into an oral
agreement to purchase 6.75 shares of Craycom common stock for $27,000. The trial
court found that the oral agreement provided that Craycom would issue the stock to
Pamela upon her request. Craycom’s business records, however, classified Pamela’s
$27,000 investment as a loan, as opposed to stockholder’s equity. Initially, Craycom
did not issue any shares of stock, nor did it pay any dividends or profit distributions
in connection with the $27,000 contribution. Pamela never requested that it do so.
          Pamela and Michael Barkhausen divorced in July 2002. Pursuant to the
divorce decree, Michael gained all contractual right, title, and interest to the Craycom
investment. Two days after the divorce became final, he sent Craycom a letter
demanding payment of $30,337.20, within sixty days, in connection with the $27,000
contribution made to Craycom. In September 2002, Craycom received another letter
from Pamela, informing it of the divorce decree and requesting that Craycom issue
6.75 shares of stock to Michael Barkhausen. On October 11, 2002, Craycom tendered
the stock to Michael Barkhausen – the same day he filed this lawsuit. The lawsuit
alleges that Craycom failed to timely issue him the shares of stock, and asserts claims
for: (1) conversion; (2) common law fraud; (3) statutory fraud; (4) recision and breach
of contract; and (5) violations of the Texas Deceptive Trade Practices Act (“DTPA”). 
The Procedural History
          Six months after Barkhausen filed suit, Craycom moved for summary
judgment. The trial court took the summary judgment motion under advisement, but
never ruled. Rather, it held a bench trial in July 2003. Both parties presented
evidence on the merits of the case, and at the conclusion of the trial, Craycom’s
attorney testified that Craycom had incurred legal fees totaling $18,500. In August
2003, the trial court signed a judgment in favor of Craycom with respect to
Barkhausen’s claims for affirmative relief. The court, however, found in favor of
Barkhausen with respect to Craycom’s DTPA counterclaim for filing a frivolous
lawsuit. It nevertheless awarded Craycom $10,000 in attorney’s fees in the judgment. 
          In September 2003, Barkhausen moved for a new trial or to modify the portion
of the judgment awarding attorney’s fees, in part because nothing in the judgment
supported an award of attorney’s fees to Craycom. The trial court denied the motion
for new trial, but granted the motion to modify the judgment. In October 2003, the
trial court amended the judgment by adding findings of fact and conclusions of law. 
These findings of fact and conclusions of law included findings that Barkhausen had
brought his lawsuit in bad faith and to “harass and intimidate the Defendants.” The
amended judgment included an award for Craycom’s attorney’s fees pursuant to
section 17.50(c) of the DTPA, and purportedly pursuant to section 38.001 of the
Texas Civil Practice and Remedies Code.


 In November 2003, Barkhausen moved
for a new trial a second time, or, in the alternative, to amend the judgment, again
requesting that the trial court remove the award of attorney’s fees from the judgment. 
          In December 2003, the trial court held an oral hearing attended by both parties. 
No reporter’s record exists of this hearing, but the parties clarified in a later hearing
that the trial court offered Craycom an election: it could either agree to a second, two-hour bench trial in January or accept the amended judgment from its first trial and
defend it on appeal.


 Craycom chose a new trial. 
          Barkhausen’s counsel then conferred with Craycom’s counsel, requesting that
the new trial be held after thirty days, so that he could demand a jury. In response,
Craycom’s counsel sent a letter to the trial court, requesting that it set the case for
trial within thirty days, so that Barkhausen would not receive a jury trial; otherwise,
his clients would “stand on the judgment as entered by the Court and seek to defend
it on appeal.” The next day, December 18, Barkhausen filed a written request for a
jury trial and paid the jury fee. 
          In January 2004, Craycom filed a supplemental petition seeking sanctions not
to exceed $70,000 pursuant to Texas Rule of Civil Procedure 13, and Chapters 9 and
10 of the Texas Civil Practice and Remedies Code, as well as section 17.50(c) of the
DTPA. On January 12, the trial court held a hearing and denied Barkhausen’s motion
for a jury trial.


 
          The trial court proceeded to hold a second bench trial on the merits. Michael
Barkhausen testified that he learned that Craycom was seeking investors when he
received a flier his son brought home from day care, informing him of an investment
opportunity. Craycom also provided proposed budgets and financial projections for
the company. The Barkhausens borrowed the money to make the Craycom
investment and tendered it to the Materas. Michael Barkhausen signed the loan
documents, but the stock purchase agreement was never signed, and Pamela
Barkhausen alone negotiated the oral transaction with the Materas. Anthony Matera
admitted that the stock purchase agreement in this case was “strictly oral.” 
          Michael Barkhausen further testified that he understood that the Barkhausens
would receive stock dividends or payments from Craycom in order to “offset the
amount of the loans that we took out for investment and that was suppose [sic] to start
in January of 2001.” Craycom concedes that Barkhausen did not receive any stock
certificates until October 2002, the day suit was filed, and that Barkhausen did not
receive a financial return on his investment. Further, Craycom did not proffer any
financial information to the Barkhausens during 2001 or 2002, or in response to
Michael Barkhausen’s DTPA demand. 
          Barkhausen concedes that he was not the sole owner of the stock in the
company until his divorce, but he testified that his former wife negotiated with
Craycom on his behalf. He further testified that he suffered adverse taxation
consequences during his marriage because Craycom characterized the stock purchase
as a loan on its books, not an equity investment, and failed to issue any
documentation for the loan to the Barkhausens. In support of his claim, he introduced
Craycom’s tax returns that reflect the Materas’ ownership of Craycom, but not the
Barkhausens’ equity interest. Moreover, Janet Latshaw, a Craycom employee,
testified that Craycom booked the purchase as a loan, pursuant to the Materas’
instructions.
          Barkhausen contacted Anthony Matera in July 2002 and indicated that he
wanted either a return of his investment or issuance of the stock certificates. Anthony
told him that he was not going to return Barkhausen’s investment, nor would he issue
the stock without going to court. In compliance with the DTPA, Barkhausen sent
Craycom a demand letter, in August, asking it to respond within sixty days. See Tex.
Bus. & Com. Code Ann. § 17.505(a)(Vernon 2002). After no response, Barkhausen
filed this suit, alleging that Craycom wrongfully accepted and deposited the $27,000
without treating his former wife and him as shareholders or issuing them any stock. 
          Sharon Matera testified that Pamela Barkhausen was never a “stockholder,”
and that she and Anthony had discussed with the accountant “what was to be done
and she made it sound like it was a normal thing to hold money until the stocks were
issued.” Sharon Matera further testified that she dealt only with Pamela Barkhausen,
who was a Craycom employee. Anthony testified that Pamela sent Craycom a letter
that instructed it to issue her stock in Michael Barkhausen’s name as a result of the
divorce decree. Pamela testified that neither she nor Craycom wished to deal with
Barkhausen until the divorce was finalized. She further testified that she and
Craycom discussed issuing a promissory note, but decided not to do so or to issue any
stock until after the divorce was finalized. Pamela stated that she was satisfied with
Craycom’s disclosures and representations and that she never provided Craycom
instructions regarding the stock issuance. 
          Craycom also presented testimony, including that of Mark Knop, its former
trial counsel, who stated that he had completed 124 hours of legal services at the rate
of $175 per hour. Craycom’s new counsel, Scott Rothenberg, attempted to call
himself as a witness. Barkhausen objected on the ground that Craycom had not
designated Rothenberg as an expert witness. The following exchange occurred: 
[Craycom’s Counsel]: Judge, we’re not asking for legal fees as damages. 
We are asking for legal fees in the nature and sense of Rule 13 or
Chapter 9 and 10 [sic] or Section 17.50 sanctions. Those are family
[sic] matters for the Court that are not considered by the fact finder per
se because the fact finder is the Court in this case, I was merely offering
it during the course of this trial to expedite matters. If the Court would
like to make a ruling on whether or not this matter was groundless and
brought in bad faith and brought for the purpose of harassment and then
convene a hearing for the purposes of a fair sanction under the
circumstances, we certainly have no problem with that. 
 
[The Court]: The objection at this time is sustained.
Thus, the court heard no evidence on sanctions “during the course of this trial to
expedite matters.” After the trial concluded, the trial court took the case under
advisement. 
          On January 23, the trial court signed a second amended judgment, together
with findings of fact and conclusions of law, in favor of Craycom. Without holding
any further hearing, the court awarded Craycom $30,000 in attorney’s fees as a
sanction, plus additional fees for any appeal. Barkhausen moved for the trial court
to reconsider the sanctions award, and, in the alternative, requested a new trial, both
of which the trial court denied. This appeal followed. 
Request for a Jury TrialBarkhausen contends the trial court erred in denying his request for a jury trial. 
Craycom responds that Barkhausen failed to timely file and pay the fee for his request
for a jury trial; thus, the trial court did not abuse its discretion in denying
Barkhausen’s jury demand. 
          We review a trial court’s refusal to grant a jury trial under an abuse of
discretion standard. Mercedes-Benz Credit Corp. v. Rhyne, 925 S.W.2d 664, 666
(Tex. 1996) (citing State v. Wood Oil Distrib. Inc., 751 S.W.2d 863, 865 (Tex.
1988)). We examine the entire record and find that an abuse of discretion exists if the
trial court’s decision is arbitrary, unreasonable, and without reference to guiding
principles. Id. (citing Simon v. York Crane & Rigging Co., 739 S.W.2d 793, 795
(Tex. 1987)); Downer v. Aquamarine Operators, Inc., 701 S.W.2d 238, 241-42 (Tex.
1985). 
          We recognize that “[t]he right to a jury trial is one of our most precious rights,
holding ‘a sacred place in English and American history.’” Gen. Motors Corp. v.
Gayle, 951 S.W.2d 469, 476 (Tex. 1997) (quoting White v. White, 196 S.W. 508, 512
(Tex. 1917)). A request for a jury trial nonetheless must be filed “a reasonable time
before the date set for trial of the cause of the non-jury docket, but not less than thirty
days in advance.” Tex. R. Civ. P. 216(a). Even if a party fails to timely pay the jury
fee, however, Texas courts have held that a trial court “should accord the right to jury
trial if it can be done without interfering with the court’s docket, delaying the trial,
or injuring the opposing party.” Gayle, 951 S.W.2d at 476 (citing Dawson v. Jarvis,
627 S.W.2d 444, 446-47 (Tex. App.—Houston [1st Dist.] 1981, writ ref’d n.r.e.);
Childs v. Reunion Bank, 587 S.W.2d 466, 471 (Tex. Civ. App.—Dallas 1979, writ
ref’d n.r.e.); Aronoff v. Tex. Turnpike Auth., 299 S.W.2d 342, 344 (Tex. Civ.
App.—Dallas 1957, no writ); Erback v. Donald, 170 S.W.2d 289, 294 (Tex. Civ.
App.—Fort Worth 1943, writ ref’d w.o.m.)). 
          Here, we cannot conclude that the trial court abused its discretion in denying
Barkhausen’s jury demand. First, Barkhausen did not request a jury in his first trial. 
He chose to request a jury for his new trial, presumably because the trial court had
ruled against him in the first trial. Yet, unlike the party denied a jury in Gayle,
Barkhausen never moved, either formally or informally, for a continuance of the
second trial that could have allowed the jury demand to become timely. Cf. Gayle,
951 S.W.2d at 477 (holding that trial court abused its discretion in refusing to grant
continuance to allow appellant’s jury request and fee to become timely when trial
judge timed trial proceedings to avoid Rule 216, appellant established that jury trial
demand would not cause adverse party injury or delay, and trial court conceded case
was not ready for trial due to outstanding discovery issues). Second, the trial court
articulated its reasons for denying Barkhausen’s jury demand. The trial judge stated
he refused the request due to his concerns regarding the extra expense that both
parties would incur and the length of the trial. Concomitantly, Barkhausen made no
showing or argument that a jury trial based on an untimely demand would not
prejudice the opposing party, and he did not suggest that the trial judge’s concerns
could be alleviated. In Gayle, the discovery in the case had not concluded. See id. 
Here, in contrast, pre-trial work on the case was complete and the case was trial-ready.
          In his briefing to this court, Barkhausen relies on Bell Helicopter Textron, Inc.
v. Abbott, 863 S.W.2d 139 (Tex. App.—Texarkana 1993, writ denied). In Bell
Helicopter, the Texarkana Court of Appeals held that the trial court’s failure to
provide proper notice of the first trial setting under Rule 245 made the defendant’s
compliance with Rule 216 impossible. Id. at 141. As a result, the court held that the
trial court’s refusal to grant Bell a jury trial constituted error. Id. In contrast,
Barkhausen does not complain that the trial court’s notice of the second setting was
improper, nor was it under Rule 245, which applies to initial trial settings. Under
these facts, we hold that the trial court did not abuse its discretion in denying
Barkhausen’s request for a jury trial. 
 
 
 
The Sanction Award
          Barkhausen contends the trial court erred in awarding Craycom $30,000 as a
sanction, plus fees for the subsequent appeal.


 Specifically, he complains: (1) the trial
court failed to hold a sanctions hearing; (2) the sanctions order fails to identify the
particular conduct justifying sanctions; (3) Craycom failed to introduce any evidence
that Barkhausen’s acts “amounted to a conscious doing of a wrong for dishonest,
discriminatory, or malicious purpose,” (4) sufficient evidence exists to counter the
sanctions award; and (5) the sanctions award is excessive, given the evidence in the
record. 
          The trial court’s judgment awards sanctions against Barkhausen under Chapters
9 and 10 of the Civil Practice and Remedies Code, Texas Rule of Civil Procedure 13,
section 17.50(c) of the DTPA, and the court’s inherent power. See Tex. Civ. Prac.
& Rem. Code Ann. §§ 9.011-.012, 10.001, 10.002(c) (Vernon 2002); Tex. R. Civ.
P. 13; Tex. Bus. & Com. Code Ann. § 17.50(c) (Vernon 2002).


 
Civil Practice and Remedies Code Chapter 10
          We review a trial court’s imposition of Chapter 10 sanctions for an abuse of
discretion. See Finlay v. Olive, 77 S.W.3d 520, 524 (Tex. App.—Houston [1st Dist.]
2002, no pet.) (citing Downer, 701 S.W.2d 241-42).
          Chapter 10 provides that the signing of a pleading or motion constitutes a
certificate by the signatory that, to the best of the signatory’s knowledge, “the
pleading or motion is not being presented for any improper purpose, including to
harass or to cause unnecessary delay or needless increase in the cost of litigation;” 
Tex. Civ. Prac. & Rem. Code Ann. § 10.001(1), and “each claim, defense, or other
legal contention in the pleading or motion is warranted by existing law or by a
nonfrivolous argument for the extension, modification, or reversal of existing law or
the establishment of new law.” Id. § 10.001(2). The court may award reasonable
expenses and attorney’s fees incurred in presenting or opposing a motion brought
under Chapter 10, and if no due diligence is shown, may award to the prevailing party
all costs for inconvenience, harassment, and out-of-pocket expenses caused by the
litigation. Id. § 10.002(c). Chapter 10 requires the court to provide a party subject
to sanctions notice and a reasonable opportunity to respond to the allegations. Id. §
10.003. In imposing sanctions under Chapter 10, a trial court is required to
specifically detail the sanctionable conduct in its order. Id. § 10.005 (“A court shall
describe in an order imposing a sanction under this chapter the conduct the court has
determined violated Section 10.001 and explain the basis for the sanction imposed.”);
Rudisell, 89 S.W.3d at 238 (“The use of ‘shall’ in the statute indicates that the
requirement for particularity in the sanction order is mandatory.”). Here, the trial
court incorporated the sanctions award into the final judgment. The final order does
not set forth Barkhausen’s particular conduct that justifies sanctions. See Tex. Civ.
Prac. & Rem. Code Ann. § 10.005. 
          In the absence of particularity in the sanctions order, some courts rely on the
trial court’s findings of fact and conclusions of law that describe and explain the
sanctionable conduct. See, e.g., Bishop, 997 S.W.2d at 356 (concluding findings and
conclusions supplied particulars lacking in sanctions order based on Chapter 10, and
thus trial court’s failure to identify sanctioned conduct with specificity in order did
not affect sanctioned party’s substantial rights or hinder its presentation of appeal);
Gorman v. Gorman, 966 S.W.2d 858, 867-68 (Tex. App.—Houston [1st Dist.] 1998,
pet. denied) (op. on reh’g) (findings of fact supplied particularities in sanctions order
based on Rule 13). Here, the findings of fact and conclusions of law provide that (1)
Barkhausen’s lawsuit was not warranted by a good faith argument for the extension,
modification, or reversal of existing law; (2) Barkhausen brought this lawsuit for the
purpose of harassing and intimidating Craycom so that it would agree to rescind the
agreement and deliver to him the $27,000 consideration given to Craycom by
Barkhausen’s former wife; and (3) Barkhausen was not entitled to recover under any
claim or cause of action asserted, and based upon the facts known to him or which
should have been known to him at the time he filed his lawsuit, he knew or should
have known that he had no good faith basis to assert that he had any right to recover
under any claim or cause of action asserted. 
          The trial court did not hold a separate sanctions hearing, and Craycom
—though it defended the claims against it —did not produce affirmative evidence of
sanctionable conduct at either of the bench trials. With the exception of the second
finding, these “findings of fact” are recitations of the legal standard for finding
sanctionable conduct, but they do not particularize the offensive conduct. We thus
examine the evidence in the record to support the mixed finding and conclusion that
Barkhausen brought this suit to harass or intimidate Craycom, and by extension, the
trial court’s other two conclusions. 
          With respect to the second finding, the trial court did not articulate specific
facts demonstrating that the lawsuit was part of a pattern of harassment or
intimidation, and Craycom presented no argument to the trial court setting forth an
evidentiary basis for it from the evidence presented at the trial on the merits. Nor did
the trial court hear evidence about Barkhausen’s lack of a good faith basis for filing
the lawsuit, at the time it was filed, based upon what he should have known, to
support the trial court’s general findings. While the trial court found that Craycom
issued shares to Barkhausen on the date suit was filed, Craycom failed to show that
this, in and of itself, rendered the lawsuit frivolous. Finally, with respect to the first
finding, Craycom has set forth reasons on appeal as to why the suit is a frivolous one,
but it never presented those to the trial court as a basis for awarding sanctions. In
fact, at the close of the evidence, Craycom’s counsel contemplated that the trial court
would convene a later hearing on the sanctions matter. Craycom’s attorney testified
as to the fees he incurred, but the trial court did not hear testimony regarding the
underlying facts that Craycom relied upon to justify sanctions under Chapter 10.
          Absent an affirmative showing in the trial record, we conclude that the trial
court abused its discretion in failing to particularize the conduct it found warranted
sanctions. Finlay, 77 S.W.3d at 525. 
Texas Rule of Civil Procedure 13
          We review a trial court’s Rule 13 sanction award under an abuse of discretion. 
Downer, 701 S.W.2d 238, 241-42; Gaspard v. Beadle, 36 S.W.3d 229, 239 (Tex.
App.—Houston [1st Dist.] 2001, pet. denied). We examine the entire record and will
overturn a trial court’s discretionary ruling if it is based on an erroneous view of the
law or a clearly erroneous assessment of the evidence. See Mercedes-Benz Credit
Corp., 925 S.W.2d 666; Downer, 701 S.W.2d at 241-42;. Courts must presume that
pleadings are filed in good faith. GTE Communications Sys. Corp. v. Tanner, 856
S.W.2d 725, 731 (Tex. 1993) (orig. proceeding). The party seeking the sanctions
bears the burden of overcoming the presumption of good faith in the filing of
pleadings. Id. 
          Rule of Civil Procedure 13 provides for sanctions if a party files a groundless
pleading brought in bad faith or for harassment. Tex. R. Civ. P. 13. If a pleading is
filed in violation of Rule 13, “the court, upon motion or upon its own initiative, after
notice and hearing, shall impose an appropriate sanction available under Rule
215.2(b), upon the person who signed it, a represented party, or both.” Id. For the
purposes of a Rule 13 violation, groundless “means no basis in law or fact and not
warranted by good faith argument for the extension, modification, or reversal of
existing law.” Id. No sanctions may be imposed under Rule 13 “except for good
cause, the particulars of which must be stated in the sanctions order.” Id. 
          In evaluating an allegation of a Rule 13 violation, “[c]ourts shall presume that
pleadings, motions, and other papers are filed in good faith.” Tex. R. Civ. P. 13. 
“Rule 13 requires the trial court to hold an evidentiary hearing to make the necessary
factual determinations about the motives and credibility of the person signing the
alleged groundless petition.” McCain v. NME Hosps., Inc., 856 S.W.2d 751, 757
(Tex. App.—Dallas 1993, no writ). “A trial court’s failure to specify the good cause
for sanctions in a sanction order may be an abuse of discretion.” Gaspard, 36 S.W.3d
at 239.
          Here, the trial court included its sanctions order in the final judgment, but did
not list the good cause particulars. A failure to make particular findings may be
harmless error, if the trial court’s findings of fact and conclusions of law “supply the
particulars of the good cause required by Rule 13.” See Gaspard, 36 S.W.3d at 239
(citing Bradt v. Sebek, 14 S.W.3d 756, 769-70 (Tex. App.—Houston [1st Dist.] 2000,
pet. denied); see also Gorman, 966 S.W.2d at 867-68 (findings of fact supplied
particularities in sanctions order based on Rule 13). 
          As discussed above, however, the trial court’s findings of fact and conclusions
of law in this case do not provide the particular conduct that warranted Rule 13
sanctions. Although the trial court found that Barkhausen brought this lawsuit in bad
faith and for harassment, no evidence in the record supports the trial court’s findings. 
Although Craycom put forth evidence that Barkhausen’s claims lacked merit, it made
no affirmative showing that these non-meritorious claims were also frivolous. The
trial court also had no evidence on the record before it to determine that Barkhausen
filed his petition in bad faith or to harass Craycom. Rather, the record shows a
legitimate disagreement about an investment, the accounting for it, and the disputed
returns on it. The trial court’s general findings in this case are insufficient to satisfy
Rule 13’s particularity requirements. Tarrant County v. Fort Worth, 942 S.W.2d 151,
155 (Tex. App.—Forth Worth 1997, no pet.).


 As required by Rule 13, it was
Craycom’s burden to prove conduct warranting sanctions. We therefore conclude
that the trial court abused its discretion in awarding attorney’s fees under Rule 13. 
DTPA Section 17.50(c)
          Section 17.50(c) of the DTPA provides that “[o]n a finding by the court that an
action brought under this section was groundless in fact or brought in bad faith, or
brought for the purposes of harassment, the court shall award to the defendant
reasonable and necessary attorneys’ fees and court costs.” Tex. Bus. & Com. Code
Ann. § 17.50(c). The Texas Supreme Court has provided that “groundlessness”
under the DTPA has the same meaning as “groundlessness” under Texas Rule of
Civil Procedure 13 – a claim having no basis in law or fact, and not warranted by any
good faith argument for extension, modification, or reversal of existing law. 
Donwerth v. Preston II Chrysler-Dodge, Inc., 775 S.W.2d 634, 637 (Tex. 1989);
Ostrow v. United Bus. Machs., Inc., 982 S.W.2d 101, 106 (Tex. App.—Houston [1st
Dist.] 1998, no pet.); see also Schlager v. Clements, 939 S.W.2d 183, 190 (Tex.
App.—Houston [14th Dist.] 1996, writ denied). 
          In determining groundlessness under the DTPA, we review all of the tendered
evidence to determine if an arguable basis in fact and law for the consumer’s claim
exists. Splettstosser v. Myer, 779 S.W.2d 806, 808 (Tex. 1989); see also Schlager,
939 S.W.2d at 190. A claimant brings a suit in “bad faith” if he is “motivated by
malicious or discriminatory purpose.” Schlager, 939 S.W.2d at 190. The trial court
determines whether a suit is groundless or brought in bad faith as a matter of law. 
Donwerth, 775 S.W.2d at 637. 
          We review the trial court’s award of attorney’s fees under section 17.50(c) as
a question of law, under an abuse of discretion standard. Id. at 637 n.3; see also
Schlager, 939 S.W.2d at 190; Ostrow, 982 S.W.2d at 106. Under such a standard, we
may not substitute our judgment for that of the trial court. Schlager, 939 S.W.2d at
191. A trial court abuses its discretion if it acts arbitrarily and unreasonably, without
reference to guiding rules or principles. Downer, 701 S.W.2d at 241-42; see also
Ostrow, 982 S.W.2d at 106. 
          Barkhausen first asserts that we should reverse the section 17.50(c) sanctions
award because he did not receive notice of Craycom’s complaints, nor an opportunity
to be heard regarding the alleged sanctionable conduct. The due process clause of the
United States Constitution limits a court’s sanctioning power. In re Bennett, 960
S.W.2d 35, 40 (Tex. 1997) (orig. proceeding); see also Davila v. World Car Five
Star, 75 S.W.3d 537, 542-43 (Tex. App.—San Antonio 2002, no pet.). Accordingly,
sanctions proceedings must afford a party notice and an opportunity to be heard. 
Davila, 75 S.W.3d at 543. Here, Craycom’s amended pleadings expressly asserted
a counterclaim seeking attorney’s fees for sanctions before the second trial. The
amended pleadings, however, did not particularize the grounds supporting an award
of attorney’s fees, but merely quoted the statutory language. Barkhausen received
notice of Craycom’s counterclaim for attorney’s fees under section 17.50(c) of the
DTPA, but the pleadings do not tell of the basis on which the trial court may have
relied to impose sanctions.
          Barkhausen further contends that the trial court’s order fails to state the
particular conduct that justifies sanctions. Unlike Chapter 10 and Rule 13, section
17.50(c) does not require that the sanctions order particularly describe the conduct
that justifies sanctions, but the trial court’s failure to include specific findings creates
difficulty in determining the basis for its sanctions award. For example, on appeal,
Craycom contends that Barkhausen was not a consumer with respect to the disputed
investment, and this is a basis to find the DTPA suit frivolous. Yet, the trial court’s
final judgment does not find that Barkhausen lacked consumer status, even with
regard to the merits of the underlying suit. Moreover, lack of consumer status under
the DTPA was not raised as an issue, either in Craycom’s motion for summary
judgment, or by counsel at trial.
          Our review of the record leads us to conclude that Barkhausen pleaded an
arguable suit against Craycom. Craycom failed to present any evidence at trial to
support its contention that Barkhausen brought this lawsuit in bad faith motivated by
a malicious or discriminatory purpose or for harassment purposes. Nor does evidence
exist in the record to show that this lawsuit lacked any arguable basis in fact or law,
and the trial court’s order does not state with particularity any evidence supporting its
finding of frivolousness under the DTPA. Moreover, Craycom did not notify the trial
court or opposing counsel as to the element or elements of the DTPA so lacking in
merit as to constitute frivolousness. Instead, as it did in its summary judgment motion,
at trial Craycom defended the DTPA claims against it generally. Craycom’s position
was that it did not misrepresent anything to Pamela Barkhausen, and that it “complied
in all manners and to all agreements” in which they entered, “[and] violated no
common law or statutory principle” with regard to the investment. The trial court
agreed, but these are issues about which the witnesses and the documentary evidence
clashed at trial. Craycom did not undertake the further showing that Barkhausen’s
claims were so devoid of merit as to be frivolous. We conclude that, absent specific
pleadings, argument, evidence, or trial court findings, the record cannot support the
trial court’s award of sanctions under the DTPA. We therefore hold that the trial court
should not have imposed sanctions under the DTPA.



Conclusion
          We conclude that, under these circumstances, the trial court did not abuse its
discretion in refusing Barkhausen’s request for a jury trial. We further conclude that
the trial court abused it discretion in awarding Craycom $30,000 in sanctions because
the trial court did not particularize the conduct justifying sanctions, and the evidence
in the record does not support the imposition of sanctions. We therefore modify the
judgment to delete the sanctions award, and affirm the judgment of the trial court as
modified. 
 
                                                             Jane Bland
                                                             Justice
 
Panel consists of Justices Nuchia, Keyes, and Bland.