Affirmed and Memorandum Opinion filed March 30, 2004









Affirmed
and Memorandum Opinion filed March 30, 2004.

 

 

 

In The

 

Fourteenth Court of Appeals

____________

 

NO. 14-02-00809-CV

____________

 

KIM-LAN VU, Appellant

 

V.

 

MARIAN S. ROSEN,
ROBERT E. NEWEY, AND ROSEN & NEWEY, P.C., Appellees

 



 

On Appeal from the 127th
District Court

Harris County, Texas

Trial Court Cause No. 00-10867

 



 

M E M O R A N D U M   O P I N I O N








Appellant Kim-Lan Vu appeals from an
adverse judgment following a jury trial on her claims of breach of fiduciary
duty and deceptive trade practices against appellees, her former
attorneys.  In five issues, some with
numerous sub-issues, Vu complains that the trial court erred in the following:
(1) submitting jury questions improperly predicated on a single transaction;
(2) determining that Vu=s fee contract with appellees was valid
and enforceable; (3) determining that Vu=s claims were
groundless, brought in bad faith, and for the purpose of harassment; (4)
directing a verdict for appellee Robert E. Newey; and (5) failing to grant Vu=s motion for new
trial.  For the reasons stated below, we
affirm.

Factual
Background

Appellant Kim-Lan Vu had breast implant
surgery in 1980-81.  One implant was
manufactured by Heyer-Schulte/Baxter (ABaxter@) and the other by
3M/McGhan (A3M@).  Believing the implants caused her to become
ill, she initially hired attorney Jeff Steidley to bring claims against Baxter
and 3M.  After about a year and a half,
Vu decided to change attorneys and eventually hired appellees Marian Rosen,
Robert Newey, and Rosen & Newey, P.C. 
Beyond this point, the parties= characterizations
of appellees= representation of Vu diverge
dramatically.  

According to Vu, between February and
April of 1994, she was required to sign three different fee contracts with
appellees, the last increasing appellees= fees.  In June of 1994, Rosen informed Vu that her
Baxter claim was settled for $2 million, and thereafter Vu was repeatedly told
the money was coming soon, whenCunbeknownst to herCthere was no
settlement.  Vu contends that appellees= repeated assurances
that the money was coming induced her to forbear going to trial against Baxter
and to take other actions.  She further
alleged that, in 1996, she was told that she could get the money if she agreed
to let attorney Richard Laminack handle her claims against 3M.  In August of that year, Vu attended a 3M
mediation at which she claims Rosen told her she had settled Vu=s 3M claims for
$1,450,000, and she signed settlement papers. 
However, in 1997, after Vu was sent interrogatories to answer, she  learned her 3M claims were not settled.  According to Vu, Rosen told her that Vu had
rejected the 3M settlement, but assured her they could still go to court
against 3M.








On May 15, 1998, Vu contends she went to
Laminack=s office and was
directed to return to Rosen & Newey=s offices, where
she got into an argument with Newey.  Vu
claims Newey told her that she had gotten more settlement money than anyone
else, and Awhat do you want?@  Vu responded that she wanted her money.  Vu claims that, at this time, she did not
know that appellees had secretly settled her 3M claim for $100,000.  In June, Vu met with Rosen and Laminack, and
Rosen again told Vu that the $2 million Baxter settlement was coming soon.

On September 10, 1998, Vu claims she met
with Rosen, who pulled out a $100,000 settlement check from 3M that had been
issued months earlier, and said that this was all she had been able to
obtain.  Vu contends she never authorized
the settlement, and was induced to accept it upon Rosen=s representations
that if Vu accepted the 3M settlement, she would get the Baxter settlement
funds within 30 days, but if she did not accept it, she would lose all the
settlements.  Vu relied on these
representations and accepted the 3M settlement. 
On October 13, 1999, after additional assurances that the Baxter
settlement funds were coming, Vu went to see Rosen, who then told her she had
never settled with Baxter and did not have the $2 million.  Vu claims she was devastated by the admission
and suffered mental anguish as a result. 

In contrast, appellees deny Vu=s claim that she
signed three fee agreements, contending there was only one fee agreement,
signed on April 8, 1994.  Appellees also
contend that Vu was a difficult client whose case was fraught with challenges,
including Vu=s preexisting medical, psychiatric, and
emotional problems, multiple cosmetic surgeries, and conflicting statements
about her past.  In fact, according to
appellees, Laminack refused to accept her case because of these issues.  

According to appellees, the 3M claim did
not settle in mediation because Vu made unrealistic settlement demands that
failed to draw any response from 3M. 
They contend that in September of 1997, Vu authorized Rosen to use her
best judgment in settling the case, and eventually, in early 1998, Rosen was
able to negotiate a settlement of $100,000 with 3M.  Rosen claims Vu orally agreed to accept the
settlement.  As for Vu=s Baxter claims,
appellees contend they never represented to Vu that the claims settled for $2
million.  Instead, the claims remained
outstanding for several years, and appellees continued to work toward the
resolution of the claims even after Vu sued them.  

 








PROCEDURAL BACKGROUND

Vu sued appellees in March of 2000,
seeking an accounting and actual damages for legal malpractice, breach of
fiduciary duties, and violations of the Texas Deceptive Trade Practices Act (ADTPA@).  During the pendency of Vu=s lawsuit,
appellees continued to represent Vu, and attempted to reach a settlement of Vu=s Baxter claims in
mediation.  At the mediation, Baxter
agreed to pay Vu $328,000, an amount appellees contend is far greater than the
settlements being obtained in cases outside the settlement grid applied to Vu=s claims.  However, when the formal agreement was
drafted, it provided for payment to both Vu and appellees.  After Rosen signed the agreement, Vu crossed
out the reference to appellees.  Because
both Vu and appellees claimed an interest in the money, Baxter interpleaded the
settlement funds and was discharged from the lawsuit.  

After the settlement of the Baxter claims,
Vu amended her petition to claim mental anguish and to seek fee forfeiture for
appellees= intentional breaches of fiduciary duty
and deceptive trade practices.  Appellees
counterclaimed, seeking attorney=s fees and court
costs under section 17.50(c) of the DTPA and a declaration of their rights to
the Baxter funds in light of their fee agreement with Vu.  

The case was tried to a jury in March of
2002.  At the close of evidence, the
trial court granted Vu=s motion for directed verdict on appellees= declaratory
judgment action, but denied it as to appellees= counterclaim for
attorney=s fees under the
DTPA.  The trial court also granted Newey=s motion for
directed verdict, dismissing all of Vu=s claims against
him.  The case was then submitted to the
jury, which returned a unanimous verdict in favor of appellees.  On May 8, 2002, the trial court signed a
final judgment against Vu.  The court
also granted appellees= DTPA counterclaim, ordering Vu to pay
$123,000 in attorney=s fees and court costs to appellees plus
additional sums for appeals.  The court
further granted appellees a judgment for the remaining settlement funds in the
registry of the court.  Later, at the
request of appellees, the trial court also entered findings of fact and
conclusions of law.  This appeal
followed.








ANALYSIS

I.        Vu
Fails to Demonstrate Error in the Jury Charge

In Vu=s first issue, she
raises six sub-issues in which she contends that the trial court erred in
predicating all of the jury questions in the court=s charge upon a
single transaction question.  Appellees,
in addition to responding on the merits, contend that most of Vu=s jury charge issues
are waived because she did not properly preserve them below.  Appellees argue that Vu has preserved error
only as to whether the predicate question improperly shifted the burden of
proof on the fiduciary duty questions to Vu. 
We agree and find that, on this issue, Vu has failed to demonstrate that
the predicate question improperly shifted the burden of proof. 

A.      Standard
of Review

The standard of review for an alleged
error in the jury charge is abuse of discretion.  See Texas Dept. of Human Servs. v. E.B.,
802 S.W.2d 647, 649 (Tex. 1990).  Error
in the charge is reversible only if harmful; that is, if it probably caused the
rendition of an improper judgment.  See
Tex. R. App. P. 44.1(a)(1).  To determine whether an alleged error in the
jury charge is reversible, we consider the pleadings, the evidence presented at
trial, and the charge in its entirety.  See
Island Recreational Dev. Corp. v. Republic of Tex. Sav. Ass=n, 710 S.W.2d 551,
555 (Tex. 1986).  








B.      Vu
Fails to Demonstrate Reversible Error in the Submission of the Breach of
Fiduciary Duty Jury Questions

Vu first complains that the breach of
fiduciary duty questions were improperly conditioned on a single transaction
occurring on September 10, 1998.  The
jury charge presented the relevant questions as follows:

JURY QUESTION NO. 1

Do you find that any party set out
below made the following representation, if any, to Ms. Vu?

You are to consider the following
representation, if any, and no other:

that at the time Mrs. Vu accepted
the 3M settlement for $100,000, the attorney represented to Ms. Vu that Baxter
had already agreed to a settlement of Ms. Vu=s claim for $2,000,000 and the Baxter settlement would be
paid within 30 days.

Answer AYes@ or No@ as to the following:

ANSWER

A.      Marian S. Rosen                      _______________

B.      Rosen
& Newey, P.C.               _______________

 

If in answer to
Jury Question No. 1 you have answered AYes@ in sections A or
B, then answer the corresponding section of the following question.  Otherwise, do not answer that section in this
question.

JURY QUESTION NO. 2

Did the party set
out below comply with an attorney=s fiduciary duty
to Kim-Lan Vu with regard to the conduct you have found in answer to Jury
Question No. 1?

You are further instructed that an
attorney owes her client a fiduciary duty. 
To prove that an attorney complied with her duty to her client, the
attorney must show:

a.       the
transaction in question was fair and equitable to the client;

b.       the
attorney made reasonable use of the confidence that the client placed in the
attorney;








c.       the attorney acted in the utmost good
faith and exercised the most scrupulous honesty toward the client;

d.       the attorney placed the interests of the
client before her own, did not use the advantage of her position to gain any
benefit for herself at the expense of the client and did not place herself in
any position where her self-interest might conflict with her obligations as a
fiduciary; and 

e.       the attorney fully and fairly disclosed
all important information to the client concerning the transaction.

Answer AYes@ or ANo@ to each as instructed.

ANSWER

A.      Marian S. Rosen                      ______________

B.      Rosen & Newey, P.C.               ______________

 

If in answer to
Jury Question No. 2 you have answered ANo@ to sections A or
B, then answer the corresponding section of the following question.  Otherwise, do not answer that section in this
question.

JURY QUESTION NO. 3

Was the failure to comply with the
fiduciary duty you have found in answer to Jury Question No. 2 a proximate
cause of damage to Kim-Lan Vu?

Answer AYes@ or ANo@ to each as instructed.

ANSWER

A.      Marian S. Rosen                      ______________

B.      Rosen
& Newey, P.C.               ______________

Thus, in order to reach the question
whether the attorneys breached their fiduciary duty to Vu and if the breach was
a proximate cause of damages, the jury first had to find that appellees told Vu
that Baxter had already agreed to settle Ms. Vu=s claim for
$2,000,000 and the Baxter settlement would be paid within 30 days if Vu would
agree to the $100,000 3M settlement.  The
jury answered ANo@ in sections A and
B of Question No. 1, and did not answer Questions 2 and 3.








Vu contends Question No. 1 (1) eliminated
from the jury=s consideration over Aninety percent@ of Vu=s case; and (2)
improperly shifted the burden of proof to Vu. 
Appellees respond that Vu waived the first complaint by failing to
adequately specify the basis for her objections during the charge conference.  See Tex.
R. Civ. P. 274 (AA party objecting to a charge must point
out distinctly the objectionable matter and the grounds of the objection.@).[1]

The charge conference confirms the
appellees= interpretation.  While Vu objected that Question No. 1
improperly shifted the burden of proof on the fiduciary duty questions, at no
time did Vu object on the grounds that Question No. 1 improperly prevented the
jury from considering the majority of the alleged breaches of fiduciary duty
from the jury=s consideration.  So, as to that complaint, Vu did not satisfy
the Payne requirement that a party Atimely and plainly@ make the trial
court aware of the complaint and obtain a ruling, see State Dept. of
Highways v. Payne, 838 S.W.2d 235, 241 (Tex. 1992), and as a result, she
did not preserve error on this point.  








Vu did, however, preserve her claim that
Question No. 1 improperly shifted the burden of proof to her.  Vu cites the well-established law that when
an attorney engages in self-dealing or otherwise benefits or profits from a
transaction with the client, a presumption of unfairness arises that shifts the
burden of proof to the attorney to prove the fairness of the transactions and
to establish that the client was informed of all material facts relating to the
transactions.  See, e.g., Keck, Mahn
& Cate v. Nat=l Union Fire Ins. Co. of Pittsburgh, Pa., 20 S.W.3d 692,
699 (Tex. 2000); Archer v. Griffith, 390 S.W.2d 735, 740 (Tex. 1964); Jackson
Law Office, P.C. v. Chappell, 37 S.W.3d 15, 22 (Tex. App.CTyler 2000, pet.
denied).

Vu claims that Question No. 1 improperly
placed the burden of proof on her.  She
claims that under the cases just cited, the lawyers had the burden of proving
the fairness of the transactions and establishing that the client was informed
of all material facts relating to the transactions.  Vu does not explain how Question No. 1
improperly shifted the burden to her to prove that the lawyers breached their
fiduciary duty.

We previously listed Question No. 1 in its
entirety; it was fact-specific, asking the jury if the lawyers made specific
representations to Vu when she accepted the 3M settlement.  We do not read Question No. 1 as shifting the
burden to Vu.  Instead, we view Question
No. 1 as an evidentiary issue that was part of one of the controlling issues in
the caseCwhether the
lawyers breached their fiduciary duty to Vu. 
See, e.g., Sell v. C.B. Volkswagen, Inc., 611 S.W.2d 897, 903 (Tex.
Civ. App.CHouston [14th Dist.] 1981, writ ref=d n.r.e.) (stating
that a controlling issue is one essential to the right of action or matter of
defense).  An evidentiary issue may
properly be considered by the jury in deciding the controlling issue, but it is
not a controlling issue itself.  Id. (citing
Witchita Falls and Oklahoma Ry. Co. v. Pepper, 134 Tex. 360, 135 S.W.2d
79 (1940)).  Question No. 2, supra,
presented the controlling issue to the jury.








Although Question No. 1 was merely an
evidentiary issue and not a controlling issue, the trial court did not abuse
its discretion in submitting the case this way. 
If the jury found that the lawyers made the representation when Vu
accepted the 3M settlement, it would have also answered Question No. 2.  But, having found that the underlying alleged
representation did not occur, there was nothing else on this issue for the jury
to consider, because the breach of fiduciary duty claim was based on the jury
believing that the lawyers made the representation concerning the 3M
settlement.  See, e.g., Westgate, Ltd.
v. State of Texas, 843 S.W.2d 448, 457 (Tex. 1992) (AIn many cases the
failure of a trial court to submit questions in broad form will not be
reversible error.@); Miller v. Wal-Mart Stores, Inc.,
918 S.W.2d 658, 663B64 (Tex. App.CAmarillo 1996,
writ denied) (holding that trial court had discretion to submit separate
questions to resolve predicate factual dispute and condition liability question
on affirmative finding to predicate issue). 
Additionally, as we noted earlier, Vu does not explain how Question No.
1 improperly shifted the burden to her. 
Vu also does not demonstrate that submitting Question No. 1 as a
predicate to Question No. 2 probably caused the rendition of an improper judgment.  See Tex.
R. App. P. 44.1.

We find no reversible error in the
submission of Question No. 1, and we overrule Vu=s claim of
error.  

C.      Vu
Waived Her Complaints Regarding the DTPA Questions








In her next issue, Vu complains in several
sub-issues that Questions 4, 5, and 6 were, for various reasons, also
improperly predicated on the jury=s answer to
Question No. 1.  Jury Question No. 4 asked, ADo you find that the attorney failed
to disclose required information about the transaction in question that was
relied on by Ms. Vu to her detriment?@ 
Jury Question No. 5 asked, AWas the making, if any, of the
representation you have found in answer to Jury Question No. 1 a producing
cause of damages for mental anguish to Kim-Lan Vu?@ 
Jury Question No. 6 asked, ADid the party named below engage in
any unconscionable action or course of action by the conduct you have found in
answer to Jury Question No. 1 that was a producing cause of damages to Kim-Lan
Vu?@  Vu complains that conditioning these
questions on an affirmative answer to Question No. 1 prevented the jury from
considering most of Vu=s long list of alleged deceptive acts or
practices from the jury=s consideration and, for purposes of DTPA section 17.50(a)(3), prevented the
jury from considering whether the actions amounted to an unconscionable Acourse of action.@ 
Additionally, Vu complains that Question No. 5 improperly used the
producing case DTPA causation standard rather than the proximate cause standard
for mental anguish caused by breach of fiduciary duty, and she further complains
that the jury was prevented from determining whether appellees= alleged actions caused mental
anguish damages for intentional breaches of fiduciary duty and intentional
violations of the DTPA.  We find, however,
that Vu failed to properly preserve these complaints below.  

At the charge conference, Vu summarily
objected to Questions 4, 5, and 6 because they were predicated on Question No.
1 and stated, APlaintiff Kim-Lan Vu would submit that all
the evidence should be taken in consideration and those DTPA questions should
be answered without a predicate.@  The trial court overruled this
objection.  We find the objection neither
adequately specifies the charge error complained of nor the grounds for the
complaint.  Additionally, the statement
that Aall the evidence
should be taken into consideration@ was not
sufficient to make the trial court aware of the numerous complaints Vu now
raises on appeal.  See Tex. R. Civ. P. 274; Payne, 838
S.W.2d at 241; see also Castleberry v. Branscum, 721 S.W.2d 270, 276
(Tex. 1986) (stating that the purpose of Rule 274 is to afford trial courts an
opportunity to correct errors in the charge, by requiring objections both to
clearly designate the error and to explain the grounds for complaint).  Vu did not provide the trial court with any
specific description of the nature of her complaint as to each alleged claim,
and did not explain what evidence of each alleged violation would be excluded
or how the exclusion of evidence would negatively affect the resolution of her
claims.  Thus, we hold that her
complaints regarding Questions 4, 5, and 6 were waived.[2]








D.      Vu
Waived Any Complaints Regarding Jury Questions 7 and 8

Vu appears to complain in her appellate
brief that all the jury questions were erroneously predicated Adirectly or
indirectly@ upon the answer to Question No. 1.  But, her brief does not contain any specific
discussion of Jury Questions 7 and 8 on intentional conduct and damages.[3]  In addition, at trial, Vu (1) objected to
these questions solely based upon the existence of the predicate question, (2)
articulated no reason why the predicate was improper as to either of these
questions, and (3) merely incorporated her arguments made to other questions
into her objections.  Vu waived any error
as to these questions.  See Washburn
v. Krenek, 684 S.W.2d 187, 190 (Tex. App.CHouston [14th
Dist.] 1984, writ ref=d n.r.e) (counsel waived objections when
he did not specifically list reasons for objections but instead incorporated
objections made to other questions); Tex.
R. Civ. P. 274 (ANo objection to one part of the charge may
be adopted and applied to any other part of the charge by reference only.@).  Without any argument or case law citation in
her appellate brief or any specific objection in the trial court to explain why
these questions should not be conditioned on Question No. 1, Vu has waived any
complaint as to these two questions.

In short, we overrule all of Vu=s jury charge
issues.

II.       The
Trial Court did not Err in Deciding as a Matter of Law that Appellees= Fee Contract of
April 8, 1994 was Valid and Enforceable.








In this issue, Vu contends that, because
the trial court granted her a directed verdict on appellees= counterclaim for
a declaratory judgment on the April 8, 1994 fee contract, it erred in
determining that the fee contract was valid and in awarding to appellees the
funds remaining in the registry of the court. 
We review the trial court=s conclusions of
law de novo.  Smith v. Smith, 22
S.W.3d 140, 143B44 (Tex. App.CHouston [14th
Dist.] 2000, no pet.).  The standard of
review is whether the conclusions of law drawn from the facts are correct.  Zieben v. Platt, 786 S.W.2d 797, 802
(Tex. App.CHouston [14th Dist.] 1990, no writ). We
will uphold conclusions of law on appeal if the judgment can be sustained on
any legal theory the evidence supports.  Waggoner
v. Morrow, 932 S.W.2d 627, 631 (Tex. App.CHouston [14th
Dist.] 1996, no writ).  Thus, incorrect
conclusions of law do not require reversal if the controlling findings of fact
support the judgment under a correct legal theory.  Id.

Vu specifically complains about the trial
court=s findings of fact
nos. 1 through 3, and conclusions of law nos. 8 and 9 in connection with this
issue.  In findings of fact 1 through 3, the trial court found
that Vu retained appellees= legal services on or about April 8, 1994, that on or about
that day Vu executed a contingency fee agreement with Rosen & Newey,
entitling them to 40 percent of any settlement plus expenses, and that Rosen
& Newey=s total fees and expenses for the
Baxter settlement were $144,096.56.  In
conclusions of law 8 and 9, the trial court determined that the fee contract
was valid and entitled appellees to 40 percent of the settlement plus expenses,
and that Rosen & Newey was entitled to the funds remaining in the registry
of the court.

Vu contends that (1) there is no basis for
the court=s findings of fact and conclusions of law
when the court granted a directed verdict in her favor, (2) appellees did not
plead an alternative basis for the recovery of the fees in the registry of the
court that would entitle them to the money, (3) the trial court wrongfully took
the issue of the validity of the contract from the jury, (4) Vu sought fee
forfeiture as a remedy for appellees= alleged breaches
of fiduciary duty, but the trial court=s conditioning of
the jury questions prevented the jury from considering all of her evidence in
support of that claim and deprived Vu of this remedy, (5) the trial court
should have determined the fee agreement constructively fraudulent based on Vu=s testimony and
awarded the funds in the court=s registry to Vu,
(6) the mediated settlement agreement conclusively proved that Vu was entitled
to the funds, and (7) the trial court erred in failing to grant Vu=s motion for
judgment notwithstanding the verdict on the entire sum in the court=s registry.  We disagree.








First, a review of the record shows that
the trial court directed the verdict only on the ground that the parties were
not construing a contract; the court did not direct a verdict that the fee
contract was invalid or that Vu was entitled to the funds in the court
registry.  Moreover, the issue of
appellees= entitlement to the funds was raised in
the agreed order on Baxter=s petition in
interpleader, which provided, among other things, that the case Ashall continue on
the merits between Kim Lan Vu and Marian S. Rosen, et al. to determine their
respective rights to the funds.@  Vu=s counsel agreed
to this order in both substance and form. 
Therefore, the trial court did not make a finding in favor of Vu on the
validity of the contract, and the agreed order provided a basis for the
consideration of appellees= entitlement to
the funds in the court registry.

Vu also contends she was entitled to a
jury question on the validity of the contracts, but her pleadings do not raise
the issue, it was not tried by consent, and she did not submit a jury question
on the issue.  Therefore, Vu
waived any claim that the fee contract was constructively fraudulent and should
be set aside.

Vu also argues that the structure of the
charge prevented the jury from considering the entirety of the evidence
regarding alleged breaches of fiduciary duty and deprived Vu of the fee
forfeiture remedy, but we have already held that Vu waived this complaint.  Further, given the trial court=s findings and
conclusions that Vu was not truthful or credible and that her claims were
baseless (discussed further below), even if the jury had found a breach of
fiduciary duty, the trial court would not have found that Vu was entitled to
the remedy of fee forfeiture or awarded her any damages on this basis.  See Burrow v. Arce, 997 S.W.2d
229, 246 (Tex. 1999) (holding that once the jury finds that an attorney has
breached his fiduciary duty to his client, the trial court determines the
amount of any fee forfeiture, since forfeiture is an equitable remedy).  








Vu=s argument that
the mediated settlement agreement in the Baxter case conclusively proved that
Vu was entitled to all the funds remaining in the court=s registry is
waived because she failed to brief the issue with supporting authorities.  See Melendez v. Exxon Corp., 998
S.W.2d 266, 280 (Tex. App.CHouston [14th
Dist.] 1999, no pet.); Rendleman v. Clarke, 909 S.W.2d 56, 59 (Tex .App.CHouston [14th
Dist.] 1995, writ dism=d as moot); Tex. R. App. P. 38.1(h). 
In any event, the award does not conflict with the fee contract, and the
trial court did not err in determining that the fee contract was valid and
enforceable.

Finally, we hold that the trial court did
not err in granting Vu=s motion for judgment notwithstanding the
verdict on the entire sum in the court=s registry.  A judgment notwithstanding the verdict is
proper if there is no evidence to support an issue, or conversely, the evidence
establishes an issue as a matter of law. 
See Rush v. Barrios, 56 S.W.3d 88, 94 (Tex. App.CHouston [14th
Dist.] 2001, pet. denied); Tex. R. Civ.
P. 301.  In reviewing the trial
court=s denial of a
motion for judgment notwithstanding the verdict, we review the evidence in the
light most favorable to the jury findings, considering only the evidence and
inferences that support them, and disregarding all evidence and inferences to
the contrary.  Navarette v. Temple
Indep. Sch. Dist., 706 S.W.2d 308, 309 (Tex. 1986).       Vu contends that she established the issue to the contrary as a
matter of law, and therefore we are obligated to reverse and render that she is
entitled to the funds awarded to Rosen & Newey from the court=s registry.  However, as discussed above, Vu waived her
complaint that the fee contract is fraudulent, and there is more than a
scintilla of evidence supporting the award of the funds to Rosen &
Newey.  Therefore, the trial court did
not err in denying Vu=s motion for judgment notwithstanding the
verdict.

We overrule Vu=s issue that the
trial court erred in holding that the April 8, 1994 fee contract was valid and
enforceable.

III.      The
Trial Court did not Abuse Its Discretion in Determining that Vu=s Claims were
Groundless, Brought in Bad Faith, and Brought for the Purpose of Harassment.

In her next issue, Vu complains that the
trial court abused its discretion in entering a final judgment against her on
appellees= counterclaim for their attorney=s fees under
section 17.50(c) of the DTPA.  Section
17.50(c) of the DTPA provides as follows:








On a finding by
the court that an action under this section was groundless in fact or law or
brought in bad faith, or brought for the purpose of harassment, the court shall
award to the defendant reasonable and necessary attorneys= fees and court
costs.

Tex. Bus. & Com. Code ' 17.50(c).  Our review of the trial court=s determinations
under Section 17.50(c) is a question of law under an abuse of discretion
standard.  Donwerth v. Preston II
Chrysler-Dodge, Inc., 775 S.W.2d 634, 637 n.3 (Tex. 1989); Schlager v.
Clements, 939 S.W.2d 183, 190 (Tex. App.CHouston [14th
Dist.] 1996, writ denied).








First, Vu contends there is no evidence
that her original or second amended petition were groundless, brought in bad
faith, and brought for the purpose of harassment.  In connection with this sub-issue, Vu attacks
the trial court=s findings of fact nos. 8, 9, 10, 11 and
14, and conclusions of law nos. 1 through 7.[4]  Vu summarily contends there is Anot one shred of
evidence in the record@ to support the trial court=s findings of fact
or conclusions of law, because the trial court never held an evidentiary
hearing to determine the circumstances of the filing of her petitions or the
motives of her attorney, and never examined, independently, the facts available
to Vu and the circumstances existing when she filed her pleadings.  Without such a hearing, Vu contends, a trial
court has no evidence to determine that the party or its attorney=s filing of the
pleading was in bad faith or to harass, citing Davila v. World Car Five Star,
75 S.W.3d 537, 543B44 (Tex. App.CSan Antonio 2002,
no pet.).  In Davila, the trial
court refused to allow the plaintiff to introduce evidence of the facts
available and the circumstances in existence at the time he filed his client=s pleadings, and
the court of appeals held that this denied the plaintiff an opportunity to be
heard in a meaningful manner.  Id.
at 544.  Here, however, the trial court
presided over a full trial on the merits encompassing all of Vu=s allegations and
appellees= defenses. 
The trial included evidence of the facts and circumstances surrounding
the filing of Vu=s petitions and what information was
available to her at the time.  We reject
Vu=s assertion that a
separate hearing is required when the trial court has had the opportunity to
consider the evidence in a trial on the merits. 








Moreover, a review of the record
demonstrates that the trial court had ample evidence upon which to make its
findings of fact and conclusions of law. 
Vu=s case relied almost entirely on her
testimony and her calendar entries, which she testified corroborated her
activities.  However, her testimony and
her calendar entries were repeatedly contradicted or disproved by the testimony
and documentary evidence presented by appellees.  For example, Vu testified that on February 4,
1994, she met with Rosen and signed a contract for Rosen to represent her, but
Rosen testified that she was in a trial then and it would have been impossible
for her to have met with Vu.  On another
date, Vu testified she spoke to Rosen at a meeting in which Rosen told her the
Baxter settlement money was coming soon, but Rosen testified she was out of
town at a seminar on that date.  Vu also
testified she spoke to a paralegal in Rosen=s office on a
specific date recorded in her calendar, but the paralegal did not work for
Rosen & Newey at that time.  Vu
testified that she signed a total of three contracts with appellees, but she
was very vague on the content of the first two, except to say that she knew the
last one increased the attorney=s fees.  However, there was documentary evidence of
only one contract, the April 8, 1994 contract, and other evidence showed that
Rosen had not agreed to represent Vu before then.[5]  Vu gave other testimony that was contradicted
by documentary evidence or her own testimony. 
For example, although Vu claims that Rosen told Vu in June of 1994 that
she had settled the Baxter claims for $2 million, in July of 1995, Vu signed a
letter in which she agreed to pursue a settlement of the Baxter claims as part
of a global settlement in which an arbitrator was to determine the value of her
case.[6]  In another instance, Vu testified that she
was not sold into slavery, but later admitted she was sold for $800 or a
car.  The record is replete with similar
examples.

When we review a trial court=s findings under
the abuse of discretion standard, we may not substitute our judgment for that
of the trial court.  Schlager, 939
S.W.2d at 191.  A trial court does
not abuse its discretion merely because it has had to resolve conflicts in
evidence.  See id.  The trial court had considerable evidence
indicating that Vu=s lawsuit was groundless, brought in bad
faith, or for the purpose of harassment; therefore, it was within the trial
court=s discretion to
determine that DTPA section 17.50 was violated, and we find no indication that
the trial court abused its discretion.  








Next, Vu complains that the evidence
showed an arguable basis in fact and law for Vu=s DTPA claims,
because Vu testified to numerous intentional misrepresentations that she relied
upon and because she supported her mental anguish claims with medical evidence.[7]  The substance of her argument is that the
trial court could not find that Vu was not truthful and not a credible witness
(findings of fact nos. 9 and 11) when credibility is to be determined by the
jury; moreover, Vu contends, a trial court should not be permitted to Aarbitrarily@ determine whether
a party has brought a claim in violation of section 17.50(c) based on the
credibility of a party during trial testimony. 
However, the courtCnot the fact finderCmust determine
whether the plaintiff=s DTPA action was groundless and brought
in bad faith or was brought for the purpose of harassment.  See Donwerth, 775 S.W.2d at 637.  The test for determining whether a party has
violated section 17.50(c) of the DTPA is A>whether the
totality of the tendered evidence demonstrates an arguable basis in fact and
law for the consumer=s claim.=@ See Schlager,
939 S.W.2d at 190 (quoting Splettstosser v. Myer, 779 S.W.2d 806, 808
(Tex. 1989)).  This determination
necessarily includes consideration of the plaintiff=s
credibility.  See Yazdi v. Republic
Ins. Co., 935 S.W.2d 875, 879B80 (Tex. App.CSan Antonio 1996,
writ denied) (holding that trial court did not err in finding plaintiff=s suit against
insurer was groundless and brought in bad faith when plaintiff=s insurance claim
was consistent with similar questionable claims, his story had many
inconsistencies, his background indicated he was deceitful, and the jury
recommended assessment of punitive damages and criminal fraud charges).  We therefore reject Vu=s contention that
a trial court may not take a party=s credibility into
account when determining whether that party has violated section 17.50(c), and
we find that the trial court did not abuse its discretion on this basis.  See Schlager, 939 S.W.2d at 191; Yazdi,
935 S.W.2d 879B80. 


In a related sub-issue, Vu contends the
trial court arbitrarily based its decision solely on its determination that Vu
was not truthful or credible.  She claims
this is an improper standard for determining whether a party has violated
section 17.50(c).  Vu=s two-sentence
argument in this sub-issue fails to demonstrate in any way that this is what
the trial court did, and we find this assertion contrary to the considerable
evidence in the record supporting the trial court=s
determination.  Therefore, we find this
contention without merit. 








Vu next complains that, because of the
improper conditioning of the jury charge, her DTPA claims were never considered
by the jury, and it is an abuse of the trial court=s discretion to
find for appellees on their DTPA counterclaim while at the same time depriving
Vu of the jury=s consideration of her claims.  Vu appears to argue that it is inconsistent
to find in favor of appellees= counterclaim when
the jury had no opportunity to reject Vu=s DTPA
claims.  Vu cites no authority for this
position, and therefore it is waived.  See
Melendez, 998 S.W.2d at 280; Rendleman, 909 S.W.2d at 59; Tex. R. App. P. 38.1(h).  

Finally, Vu argues no evidence shows that
Vu filed and prosecuted a fictitious suit. 
In this sub-issue, Vu complains that there is no evidence to support the
trial court=s finding that Vu presented a fictitious
lawsuit (finding of fact no. 10) and, that, in any event, this is not an
element of a section 17.50(c) claim. 
Therefore, Vu claims the finding was Apure surplusage@ and should be set
aside as an abuse of discretion.  As
noted above, a trial court considers the totality of the evidence when
determining whether a party has violated section 17.50(c) of the DTPA.  See Schlager, 939 S.W.2d at 190.  Therefore, the trial court could have
considered such evidence.  Moreover, as
discussed above, there was evidence from which the trial court could have
determined that Vu presented a fictitious suit. 

Therefore, we overrule Vu=s issue that the
trial court abused its discretion in determining that Vu=s claims were
groundless, brought in bad faith, and brought for the purpose of harassment.

IV.      The
Trial Court did not Err in Directing a Verdict for Robert E. Newey at the Close
of Evidence.

In her next issue, Vu contends the trial
court erred in granting a directed verdict for Newey at the close of evidence,
because there was disputed evidence that, on at least two occasions, Newey made
intentional representations to Vu about her settlement funds in the 3M
case.  Again, we disagree.








When reviewing a directed verdict, we
consider all the evidence in the light most favorable to the party against whom
the verdict was rendered and disregard all evidence and inferences to the
contrary.  Qantel Bus. Sys. v. Custom
Controls, 761 S.W.2d 302, 303B04 (Tex.
1988).  If there is any evidence of
probative value which raises a material fact, the judgment must be reversed and
the case remanded for the jury=s determination on
that issue.  Id.  A directed verdict is proper when the
plaintiff fails to present evidence raising a fact issue essential to the
plaintiff=s right of recovery.  Prudential Ins. Co. of Am. v. Fin. Review
Servs., Inc., 29 S.W.3d 74, 77 (Tex. 2000). 

In support of this issue, Vu identifies
two statements Newey allegedly made to her. 
In the first instance, Vu testified she telephoned Newey on November 25,
1996, and asked him, A[W]hen [is] the money going to be in@Cmeaning the 3M
settlement moneyCand he said, ASoon.  It is not here yet.@  In the second instance, Vu testified that she
spoke to Newey on May 15, 1998 at his office, and he was angry that she had
gone to see Richard Laminack.  She stated
that Newey told her she had no business going to see another attorney because
she had received Amore money than anybody else@ and AWhat do you want?@[8]  Newey denied these exchanges took place.  Additionally, Vu contends Newey authorized a
letter sent to Vu on July 13, 1995, that was inconsistent with Rosen=s representations
to Vu.  This letter sets out Vu=s option to pursue
a settlement with Baxter based on an arbitrator=s determination of
the value of her claim, and it was signed by Newey and agreed to by Vu.  








Viewing Newey=s statements in
the light most favorable to Vu, we find they do not amount to probative
evidence concerning a fact material to Vu=s
allegations.  The statements are simply
too vague and could not support a claim for breach of fiduciary duty or
deceptive trade practices.  Moreover, Vu
identifies no potentially actionable statements in the letter signed by Newey,
and liability cannot be imposed on Newey merely because the contents of the
letter may conflict with representations made by Rosen.  If anything, the letter contradicts Vu=s claim that Newey
participated in misrepresenting the settlements, because it demonstrates that
Newey was aware that, at that time, there had been no Baxter settlement. 

Therefore, we overrule Vu=s issue that the
trial court erred in granting a directed verdict to Newey.

V.      The
Trial Court did not Err by Failing to Grant Vu=s Motion for New
Trial Based on Newly Discovered Evidence

Lastly, Vu contends that the trial court
erred by failing to grant her motion for new trial based upon newly discovered
evidence supporting the existence of three fee contracts.  However, we hold that the trial court did not
abuse her discretion in denying a new trial on this basis, because the new
evidence is not material and counsel has not demonstrated due diligence in
discovering it. 

A trial court properly grants a motion for
new trial on the basis of newly discovered evidence where the movant shows four
things: (1) the evidence came to his knowledge after the trial; (2) the failure
to discover this evidence sooner was not caused by lack of due diligence; (3)
the evidence is not cumulative; and (4) the evidence is so material that it
would probably produce a different result if a new trial were granted.  Jackson v. Van Winkle, 660 S.W.2d 807,
809 (Tex. 1983), overruled on other grounds, Moritz v. Preiss,
121 S.W.3d 715 (Tex. 2003); Rankin v. Atwood Vacuum Mach. Co., 831
S.W.2d 463, 467 (Tex. App.CHouston [14th
Dist.] 1992), writ denied per curiam, 841 S.W.2d 856 (Tex. 1992).  The decision whether to grant a new trial is
within the sound discretion of the trial court and we must uphold this decision
absent a showing of abuse of discretion. 
Jackson, 660 S.W.2d at 809. 
Every reasonable presumption will be made on review in favor of orders
of the trial court refusing new trials.  Id.
at 809B10. 








In support of her issue, Vu directs us to
a letter she contends corroborates her testimony that she signed three
different contracts with appellees.  The
letter is a cover letter to Vu from a paralegal at Rosen & Newey, dated May
6, 1994.  A review of the letter reveals
that it references not three distinct contracts, but three copies of a single
contractCprobably the April
8, 1994 fee contract between Vu and appellees. 
The letter states as follows: AEnclosed are two
signed contracts for your records.  You
initially signed three contracts, and we only require one original for our
files.@  This document does not support Vu=s claim that she
signed three different contracts with appellees, and therefore is not so
material that it would probably produce a different result if a new trial were
granted.  Moreover, Vu has not
demonstrated that she exercised due diligence in discovering the document.  Although Vu contends the letter was not
timely produced by appellees, she admits that appellees made Avoluminous boxes
of documents@ available for review during the
trial.  Vu does not explain why she was
unable to discover the document until after the trial.  Therefore, we hold that the trial court
did not abuse its discretion in refusing to grant Vu=s motion for new
trial based on newly discovered evidence.

We affirm the judgment of the trial court.

 

/s/      Wanda McKee Fowler

Justice

 

 

 

Judgment
rendered and Memorandum Opinion March 30, 2004.

Panel
consists of Justices Yates, Hudson, and Fowler.











[1]  Appellees also assert that Vu=s proposed jury questions were not
submitted in substantially correct form in contravention of Texas Rule of Civil
Procedure 278 because they include a line in the answers for the jury to find
wrongdoing by attorney Newey individually, when the trial court had orally
granted a directed verdict for Newey at the close of evidence.  See Tex.
R. Civ. P. 278 (failure to submit a question in the charge is not a
ground for reversal unless its submission, in substantially correct wording,
has been requested in writing and tendered by the party complaining of the
judgment).  However, the Texas Supreme
Court has defined Asubstantially correct@ wording to mean wording Athat in substance and in the main
is correct, and that is not affirmatively incorrect.@ 
Placencio v. Allied Indus. Int=l, Inc., 724 S.W.2d 20, 21 (Tex.
1987).  The inclusion of a line for Newey
in the answers does not render the questions affirmatively incorrect.  Moreover, we find appellees= single unpublished case,
Coldwell Banker Residential Real Estate, Inc. v. Milosevich, No. 01-92-01094-CV,
1994 WL 132793, at *1 (Tex. App.CHouston [1st Dist.] April 14, 1994, no writ) (not
designated for publication), factually distinguishable. 





[2]  In the trial
court, Vu never said as directly as she does on appeal that Question No. 1
asked about only one of several misrepresentations, all of which she wanted the
jury to consider.  We find counsel=s comment that Aall the
evidence should be taken into consideration and those questions answered
without a predicate@ too vague to inform the court of her real complaint:
that conditioning all of the remaining questions on Question No. 1 meant that
the jury might not consider the other alleged misrepresentations.  It appears from the record that the trial
judge did not understand her objection.





[3]  Jury Question
No. 7 was predicated on Ayes@ answers to Questions 4, 5, or 6 and asked, ADo you find that any party named below intentionally
engaged in the conduct you have found in answer to Jury Questions 4, 5, or 6?@  Jury Question
No. 8 was predicated on a Ayes@ answer to Questions 3 or 7 and asked, AWhat sum of money, if any, if paid now in cash, would
fairly and reasonably compensate Kim-Lan Vu for her damages, if any, that
resulted from the conduct you have found by the party named below?@





[4]  In finding of
fact no. 8, the trial court found that Vu Acontinued
to prosecute her suit against Defendants without any proof of her claim and in
the face of direct evidence disputing her claims.@  In findings of fact nos. 9B11, the trial court found that Vu was not truthful
when testifying at the trial, she presented a fictitious suit, and she was not
a credible witness.  In conclusions of
law nos. 1B7, the trial court determined the following: (1) Vu=s allegations in her first amended petition and as
stated by her at trial that, among other things, defendants represented to her
that her lawsuit against Baxter had settled for $2,000,000.00, defendants
represented to her that her lawsuit against 3M had settled for $1,450,000.00,
and defendants represented to her that if she settled her lawsuit against 3M
for $100,000.00, she would receive $2,000,000.00 from Baxter in the near future
Alacked evidentiary support at the time of the filing
of this lawsuit, had no basis in fact and [were] alleged in bad faith and for
the purposes of harassment@; (2) Vu=s DTPA claims
were groundless in fact, brought in bad faith and brought for the purpose of
harassment; (3) there is no arguable basis for Vu=s DTPA
claims; (4) Vu=s continued prosecution of her claims Aconstituted bad faith without any concern for the
state of the law or fact and was not warranted by a good faith argument for the
extension, modification or reversal of existing law@; (5) the filing of Vu=s
lawsuit against defendants Awas in bad faith without any concern for the state of
the law or fact and was not warranted by a good faith argument for the
extension, modification or reversal of existing law[ and e]ach act of bad faith
alone warrants the granting of Defendants=
counterclaim as well as a combination of such acts and all the acts together@;  (6) the
filing of Vu=s lawsuit was for the purpose of harassment, Aa pattern perpetrated by Vu throughout the lawsuit@; and (7) the findings of fact and conclusions of law Aset forth proper grounds for a conclusion that
Defendants= counterclaim should be granted and a judgment ordering
Plaintiff to pay Defendants the amount of their attorneys= fees should be entered.@  





[5]  Vu testified she remembered only
that the first contract consisted of a single page, the second one was two or
three pages.  In contrast, Rosen
testified that the April 8, 1994 contract was the only contract between Vu and
appellees.  Rosen also testified that the
one- and two-page documents Vu recalled were probably forms used in appellees= office to gather preliminary
information on prospective clients, and she testified at length about the
information that was required before representation of a prospective breast
implant client like Vu was undertaken.





[6]  Moreover, at
the time Vu contends Rosen had negotiated the Baxter settlement, appellees had
not yet even made an appearance in the case as Vu=s
attorneys of record.





[7]  Vu also
complains that the trial court should have taken into account the affidavit of expert witness John
Gladney, which Vu tendered in response to
appellees= motion for summary judgment.  In his affidavit, Gladney opined on the viability of
Vu=s claims based on his review of Vu=s first amended petition and Vu=s affidavit in support of her response.  Vu contends that, while it was not trial
testimony, it should have been considered by the court in addition to Vu=s testimony and calendar evidence.  Vu appears to contend in this sub-issue that
the existence of some evidence contrary to the trial court=s findings and conclusions is sufficient for us to
find an abuse of discretion; however, that is not the standard.  See Schlager, 939 S.W.2d at 191. 





[8]  Vu testified
that she then left the office based on Newey=s
statement that Rosen would call her the next day, but she did not call.